Madden, Judge,
delivered the opinion of the court:
In April 1946 the Quartermaster Corps of the Army invited bids from many manufacturers for the manufacture of wool army trousers. Twenty-three manufacturers, including the plaintiff, submitted bids for various quantities. The bids ranged from plaintiff’s bid of $0.975 per pair to a high of $2.475 by one manufacturer. A contract for 30,000 pairs was made with the plaintiff at its bid price. Other contracts were made with other manufacturers at higher prices, the average price being about $1.35 per pair.
The plaintiff’s official who prepared its bid was negligent. His telegraphic bid, quoted in Finding 6, offering to sew the trousers “either single or double needle” showed that he *331 was unaware that wool cloth could not be sewed “double needle”. The bid was low, but the whole set of bids covered so wide a range of prices that the price, in itself, would not necessarily have put the Government’s agents on notice that it was made by mistake. But one agent of the Government, not officially connected with the contract, attempted to convey a warning to the plaintiff that it might be mistaken. And another official put the plaintiff on direct notice that it should consider again whether it wanted to let its bid stand, and the plaintiff did reconsider and decided that it “could make out with the 97% cents”. In the circumstances, we think the plaintiff cannot charge the Government with having snapped up an advantageous offer made by mistake. We think the Government’s agents did all that could have been expected to protect the plaintiff from its own imprudence.
The plaintiff lost heavily on the contract. Its costs were $2.0333 per pair of trousers. It got behind in its deliveries, and the Government on September 19, 1946, terminated its right to deliver the last 10,000 pairs of trousers, as it had a right to do under the contract. The Government had these 10,000 pairs manufactured by another manufacturer, and charged the plaintiff with the cost, above the plaintiff’s contract price of $0,975 per pair, of getting them made. The plaintiff complains that the Government paid the substitute manufacturer more than was necessary, and sues for the alleged excess which the Government collected from the plaintiff by deduction from money otherwise due the plaintiff.
The circumstances of the reletting of the contract for the last 10,000 pairs of trousers covered by the plaintiff’s contract were these. About September 3, 1946, the Army, still being in the market for large quantities of wool trousers, sent telegraphic invitations to 117 manufacturers, none of whom were engaged in the manufacture of the six and one-half millions of pairs of trousers then on order, inviting bids. Only one bid was received in response to this invitation. The bidder offered to make 173,400 pairs of trousers at $1.85 each. When the Government terminated the plaintiff’s contract as to its last 10,000 pairs of trousers on September 19th, it negotiated a contract for these trousers with that *332 bidder at the bid price of $1.85, and paid $18,500 for the manufacture of the 10,000 pairs.
We think the Government did not use due diligence to mitigate the damages resulting from the plaintiff’s breach of its contract. The Government’s efforts, on September 3, to interest additional manufacturers in taking contracts seems to have shown that it already had under contract all those who were able or willing to manufacture wool trousers at a reasonable price. The Government was not, apparently, willing to pay $1.85 per pair out of its own money to get the additional large quantities of trousers that it wanted when it sent out the September 3 invitation. We think it should not have been willing to pay that price out of the plaintiff’s money without making an effort to avoid doing so. It had, at that time, thirty-nine manufacturers making 6,472,000 pairs of woolen trousers. We think if it had tried it could have induced one or more of them to add the few thousand pairs necessary to make up for the plaintiff’s default, and at a price not to exceed $1.50 per pair, which would still have been well above the average price of their contracts. Government counsel suggested in argument, though there was no evidence to that effect, that the Government was afraid that the award of additional work to contractors already engaged under existing contracts might have caused them to be late in their deliveries. However, hostilities had been over for a year and it would seem that the mere possibility of delay in delivery of such a small number of pairs of trousers was not a justification for subjecting the plaintiff to the high price of $1.85 per pair.
The plaintiff may recover the difference between the $1.85 per pair collected from it, and $1.50, the price at which we think the Government, by due diligence, could have secured the trousers. It may have a judgment for $3,500.00.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.