**Albert J. JANSEN, doing business as Mercury Service**

v.

**The UNITED STATES.**

No. 78–62.

United States Court of Claims.

April 16, 1965.

C. Emerson Duncan, II, Washington, D. C., for plaintiff. J. Clinton Peterson, Kilpatrick, Peterson & Ely, Vallejo, Cal., David Booth Beers and Ely, Duncan & Bennett, Washington, D. C., of counsel.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

This is an action to recover amounts allegedly due plaintiff under two Air Force contracts. The issue presented for our decision is the interpretation of the payment formula included in the contracts. While two separate contracts are in issue, both present the same issue of law and they will be discussed jointly.

On June 18, 1958, plaintiff was awarded contract AF 45 (603)–441 (hereinafter referred to as No. 441), which was an estimated requirements contract to

provide the services necessary for the cleaning of C–118 and C–124 type aircraft at McChord Air Force Base, Washington, for the year, July 1, 1958–June 30, 1959. On February 13, 1959, plaintiff was awarded contract AF 45(631)–315 (hereafter referred to as No. 315), which called for the performance of similar services for C–47 and C–124 type aircraft at Larson Air Force Base, Washington, for the year March 1, 1959–February 29, 1960.

Payment was based on a stated amount for each service performed on each aircraft. In this regard contract No. 441, at Schedule page 4, provided:

| "Item No. | Supplies or Services | Quantity ESTIMATED PER MONTH | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| 1. | C–118, Complete Corrosion Control Wash in accordance with paragraph 7 of Specifications for Cleaning, Washing and Corrosion Control of Aircraft. | 7 | ea. | $135.00 | $ 945.00 |
| | * * | * | * | * | |
| 2. | C–118, Brightening of Aircraft in accordance with paragraph 9 of Specifications for Cleaning, Washing and Corrosion Control of Aircraft. | 1.5 | ea. | 460.00 | 690.00 |
| | * * | * | * | * | |
| 5. | C–124, Complete Corrosion Control Wash in accordance with paragraph 7 of Specifications for Cleaning, Washing and Corrosion Control of Aircraft. | 15 | ea. | 160.00 | 2,400.00 |
| | * * | * | * | * | |
| 7. | C–124, Brightening of Aircraft in accordance with paragraph 9 of Specifications for Cleaning, Washing and Corrosion Control of Aircraft. | 3 | ea. | 530.00 | 1,500.00 |
| | * * | * | * | *" | |

Contract No. 315, at Schedule page 5, provided:

| "Item No. | Supplies or Services | Quantity ESTIMATED PER MONTH | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| | NON PERSONAL SERVICES | | | | |
| | Treatment and/or brightening service of aircraft and equipment listed below in accordance with the specifications attached hereto as Exhibit 'A' and made a part hereof. | | | | |
| 1. | C–124 A/C Complete corrosion control wash. | 20 A/C | | $110.00 | $2,200.00 |
| | * * | * | * | * | |
| 3. | C–124 A/C Brightening of aircraft. | 11 A/C | | 360.00 | 3,960.00 |
| | * * | * | * | * | |
| 4. | C–47 A/C Complete corrosion control wash. | 4 A/C | | 25.00 | 100.00 |
| | * * | * | * | * | |
| 6. | C–47 A/C Brightening of A/C. | 1 A/C | | 50.00 | 50.00" |

———◆———

We are concerned with two basic procedures for cleaning aircraft: (1) corrosion control wash (hereafter referred to as wash), which is essentially a hot water bath for scrubbing the aircraft, with some corrosion control chemicals added to the bath; and (2) brightening, which is an acid cleaning process to remove corrosion and oxide formations which are not normally removed by routine washing operations. Even when it is not mandatory, brightening is usually preceded by washing.

In contract No. 441, the payment schedule quoted above refers to paragraph 7 of the specifications for detailed instructions on washing and to paragraph 9 of the specifications for the brightening procedures. Contract No. 315 makes no such reference in the schedule of pay items, but the specifications prescribe the washing procedures in paragraph 6 and the brightening process in paragraph 8. The washing paragraphs in both contracts do not refer to the brightening paragraphs. However, the brightening paragraphs do refer to washing in a manner illustrated for both contracts in the following language of paragraph 9 of the specifications of contract No. 441:

"9. *Brightening Treatment Requirements.* When brightening treatment is required, the contractor shall perform the following work:

"a. Clean the aircraft as specified in paragraph 7 of this specification.

"b. Brighten the aircraft as specified in T.O.1–1–1, paragraphs 2–25 through 2–36."

The only other relevant portions of the instant contracts are the clauses which prescribe the "Maximum Allowable Time for Services". These clauses set forth the total elapsed time which the contractor is permitted for the performance of

a given service or services on an air- the specifications of contract No. 441
craft. In this respect, paragraph 4 of stated:

"4. *Maximum Allowable Time for Services.* The contractor shall not exceed the maximum allowable elapsed time indicated for the services listed below. The elapsed time will start at the scheduled input time or actual delivery time of the equipment requiring services, whichever is later. When more than one item of services are [sic] required simultaneously, elapsed time will not be cumulative. No more than three (3) services will be scheduled to be accomplished at one time.

| *ACFT Type* | *Type of Service* | *Maximum Allowable Time (Hours)* |
|---|---|---|
| a. C–118 | Complete Corrosion Control Wash | 3 |
| * | *       *       *       * | |
| c. C–118 | Brightening of Aircraft | 8 |
| * | *       *       *       * | |
| e. C–124 | Complete Corrosion Control Wash | 4 |
| * | *       *       *       * | |
| g. C–124 | Brightening of Aircraft | 8" |

In the same way, paragraph 4 of the specifications of contract No. 315 provided:

"4. *Maximum Allowable Time for Services.*

"a. The contractor shall not exceed the maximum allowable elapsed time indicated for the services listed below. The elapsed time will start at the scheduled input time or actual delivery time of the equipment requiring services, whichever is later. When more than one item of services is required simultaneously, elapsed time will not be cumulative. No more than four (4) services may be scheduled at any one time, and of this number, no more than one (1) aircraft and/or mobile refueler or engine test stand simultaneously.

| *Type of Equipment* | *Type of Service* | *Maximum Allowable Time (Hours)* |
|---|---|---|
| 1. C–124 Aircraft | Complete corrosion control wash. | 5 |
| * | *       *       *       * | |
| 3. C–124 Aircraft | Brightening of aircraft. | 8 |
| * | *       *       *       * | |
| 4. C–47 Aircraft | Complete corrosion control wash. | 3 |
| * | *       *       *       * | |
| 6. C–47 Aircraft | Brightening of aircraft. | 4 |
| * | *       *       *       * | |

Note: Work described in items 3 and 6 above includes work as directed in items 1 and 4."

The circumstances surrounding the execution of the contract appear to have been routine, except for plaintiff's contentions as to the force and effect of prior contracts (which will be discussed later) and the bid pattern. It appears that the second lowest bidder on contract No. 441 was very close to plaintiff's bid, but in No. 315, he was 100 percent higher. After the bid opening on both contracts, the contracting officers requested plaintiff to confirm his bid. Plaintiff did so and took such action with full knowledge of the other bids submitted.

From the very beginning of the work on contract No. 441 in July 1958, the contracting officer denied plaintiff's claim that when washing is performed incident to brightening, each operation constitutes a separate service for payment purposes. The contracting officer consistently took the position that the payment for brightening, by contractual definition, included washing. His position was formalized in his final decision, which upon appeal was upheld by the Armed Services Board of Contract Appeals in an opinion dated October 30, 1959.

Under contract No. 315, plaintiff was paid separately for the washing and brightening until October 1959. The record does not show whether such separate payments were made to plaintiff upon the basis of a conscious and overt decision of the contracting officer. However, after an audit, the contracting officer demanded restitution of all payments for washes which were performed as an incident to brightening and withheld other moneys due under the contract as a setoff. Upon appeal, the Armed Services Board upheld the contracting officer on this issue in a consolidated opinion dated October 6, 1960. Plaintiff subsequently repaid the amounts of the alleged overpayments claimed by the government and this suit followed.

■ The parties agree that there are no facts in dispute and that the sole issue presented here is the proper interpretation of the payment provisions of the contracts. This presents an issue of law,

Stein Bros. Mfg. Co. v. United States, 162 Ct.Cl. 802, 337 F.2d 861 (1963) and therefore the interpretation placed upon the contracts by the Armed Services Board is not binding upon us, 41 U.S.C. § 322; W. H. Edwards Engineering Corp. v. United States, 161 Ct.Cl. 322 (1963); Bruno New York Industries, Inc. v. United States, No. 393–59, 342 F.2d 75, Ct.Cl., March 12, 1965.

Defendant contends that the contract provisions are clear and unambiguous on their face and were correctly interpreted by the contracting officers and the Armed Services Board. Of necessity, plaintiff's position is more elaborate. He contends: (1) both parties to the contract intended that brightening and washing should be paid for as separate services; (2) if brightening included washing, then the times allowed for the performance of the brightening service in the contracts were impossibly short, and the contracts should be read in a manner to avoid impossibility of performance; or alternatively, an interpretation which shows impossibility of performance constitutes an ambiguity which should be resolved against defendant, and (3) in contract No. 315, the variance between plaintiff's bid and the next lowest bid should have put defendant on notice of plaintiff's interpretation of the contract.

### Intention of the Parties

■ In his first contention, plaintiff is in effect urging a reformation of the contract as written to conform the real intention of the parties and is thereby asserting the traditional doctrine of mutual mistake, Restatement of Contracts, § 504 (1932). If the intention of both parties can be established as something other than was contained in the contracts, this court has jurisdiction to reform the contract as an incident to the rendition of a money judgment, Jones & Sears, Inc. v. United States, 158 Ct.Cl. 162 (1962).

In support of his position, plaintiff asserts that in all prior contracts, defendant had provided separate payments for washing and brightening—thus such sep-

arate payments had become an established contractual practice. The statement is not completely accurate. Contract AF 29(602)–1359 at Walker Air Force Base, New Mexico, executed December 29, 1958, provided for separate payments for "Complete Washing" and "Complete Washing and Brightening".

■ However, even if plaintiff's contention is accepted, we cannot conclude from the record before us that defendant intended any other payment formulae than those which appear on the face of the contracts. Plaintiff produced no evidence of statements by government officials that they intended to continue the former contractual practices in the face of new contracts which contained substantially different provisions. We find these clear departures from the provisions of the earlier contracts to be more persuasive than the prior history of contractual relationships. To hold otherwise would impose an affirmative duty on the government to call every change in contract forms to the attention of any bidder who had previously performed similar work for the government. The changes in the contracts in issue are clear and significant. First, the earlier contracts did not include any reference to washing in the contract definition of brightening. Second, under the terms of the prior contracts, washing was not always required before brightening, although it was usually done.[1] In the instant contracts, it is mandatory that the washing be done prior to the brightening.

■ Plaintiff further argues that the action of the contracting officer at Larson Air Force Base, in making payments in accordance with plaintiff's interpretation of the contracts for 8 months, is demonstrative of the intention of the parties. It is a canon of construction that the interpretation placed by the parties upon a contract during its performance is demonstrative of their intention. Universal Match Corp. v. United States,

161 Ct.Cl. 418 (1963). It is also clear that such an interpretation must be the conscious action of a responsible agent of the party against whom the interpretation is urged, Deloro Smelting and Refining Co. v. United States, 161 Ct. Cl. 489, 317 F.2d 382 (1963).

■ In this case, it has not been shown that the contracting officer or anyone else in authority at Larson Air Force Base thoughtfully considered the payment formula. So far as the record reveals, the payments may have been made as a matter of routine by the finance office. In addition, the practice at McChord Air Force Base was completely to the contrary. Any probative value of the evidence of the intention of the parties that may be gleaned from such payments at Larson Air Force Base is inconclusive and outweighed by other considerations.

■ We conclude that the evidence, as a whole, does not support plaintiff's contention that the parties intended any other payment formulae than those which are contained in the language of the contracts.

*Impossibility of Performance*

■ Plaintiff seeks to reinforce his initial argument as to the intent of the parties by asserting that if brightening included washing, the brightening operation could not have been completed within the time specified in each contract. For example, in contract No. 441, 8 hours were allowed for brightening and washing of C–124 aircraft and 4 hours were permitted for washing alone. Therefore, 4 hours were presumably available for completing the brightening component alone. Plaintiff claims that both operations could not be done in 8 hours, or, alternatively, that the brightening process took much longer than the washing. Consequently, plaintiff argues that the contracts should be read in a way that avoids impossibility of performance. The short answer to this con-

---

[1]. Technical Order 1–1–1. "Cleaning of Aeronautical Equipment", which was incorporated by reference in those contracts, provided at paragraph 2–27:

"Best results will be obtained if the aircraft is cleaned before the brightening is begun. Cleaning is not necessary unless the soil is heavy; * * * ".

tention is that plaintiff has not demonstrated that the required services could not be completed within the specified periods of time, nor has plaintiff shown that the time requirements presented unusual difficulties. In his testimony before the Armed Services Board of Contract Appeals, plaintiff admitted that there was a wide variance in performance times, depending on the size of crew employed and the prevailing weather conditions. The variations in the time allowed for brightening C–124 aircraft in contract No. 441 and in the time specified in contract No. 315 for the same work corroborates such evidence.

Furthermore, the time provisions of each contract included the following:

"When more than one item of services are [sic] required simultaneously, elapsed time will not be cumulative."

In contract No. 315, the note at the end of paragraph 4 specifically states that the time allowed for brightening includes washing time. Contract No. 315 is thus clear on this matter, and in contract No. 441, it is at least apparent that the time allowed for washing was not to be added to the time provided for brightening.

We conclude that the time provisions create no inconsistency or ambiguity in the terms of the contracts. Where a contract is amenable to only one reasonable construction upon its face, it would not be appropriate to strain the language of other contractual provisions to create an ambiguity. The contract should be enforced according to its tenor as a whole. Russell & Pugh Lumber Co. v. United States, 290 F.2d 938, 154 Ct.Cl. 122 (1961).

### Unilateral Mistake

 There remains for consideration the effect of plaintiff's unilateral misinterpretation of the contract. The general rule is that relief will not be granted for a party's unilateral mistake unless the other party knew or should have known of the mistake. Allied Contractors, Inc. v. United States, 159 Ct.

Cl. 548 (1962); Russell & Pugh Lumber Co. v. United States, supra; Restatement of Contracts § 505 (1932). There is no evidence that defendant in any way misrepresented the terms of the contract or that its representatives made any statements to plaintiff as to the meaning of the contracts. The only evidence in support of the claim is the 100 percent variance between plaintiff's bid and the next lowest bidder on contract No. 315. There was no substantial variance between the low bidders on contract No. 441. After the opening of the bids and with the full knowledge of the other bids, plaintiff confirmed his bid on each contract.

Upon the record, we cannot conclude that defendant knew or had reason to know of any error plaintiff may have made in either of his bids.

For the reasons stated above, we hold that the contracts in issue must be enforced according to their terms. Since our interpretation of the contracts is the same as was set forth in the decisions of the contracting officers and the Armed Services Board of Contract Appeals, plaintiff's motion for summary judgment must be denied, and defendant's cross-motion granted. Judgment is entered to that effect, and the petition is dismissed.