Plaintiff appeals from a decision of the General Services Board of Contract Appeals (Board) denying its claim for $15,000 compensation due to allegedly defective Government drawings. Plaintiff asserts the Board’s decision is arbitrary and unsupported by substantial evidence. Alternatively, plaintiff seeks a reformation of the contract. After consideration of the parties’ arguments presented in their briefs and at oral argument, we deny plaintiffs claims and thereby hold for the defendant on both grounds.
*570 On June 27, 1973, plaintiff was awarded a contract for the construction of a concrete sidewalk, waterproofing a patio, and installing a system of power doors at the Federal Building in Charlottesville, Virginia. Plaintiffs bid was one of four received and was opened on June 13, 1973. Its bid was for $27,234.[1] The original Government estimate of the cost of the construction was $17,200. After receipt of the bids, however, the Government determined the original estimate was inaccurate due to an error in the quantity takeoff. The estimate was thereupon raised to $30,950.
Included in the materials supplied by the Government were drawings of an architectural site plan. These drawings had a scale indicating 1/8” = V; however, the drawings had been photographically reduced to half-size and thus the scale indicated was inaccurate. The true scale was Vía ” = 1’. The drawings did not indicate they were half-size, but they did bear the following notice: " note: all measurements must be verified at building by the contractor before work indicated hereon is started.” On Drawing 27-105, dimensions were shown for a row of six connecting activator and safety mats leading to and through the power doors. The dimension for each mat was shown to be 36 inches long. Therefore, the total dimensions for the six mats would be 18 feet. But, using a ruler and applying the %” — 1’ scale would yield a total of only 9 feet. Drawing 27-106 contained same printed dimensions which likewise were twice what a ruler and the printed scale would indicate.
No mention of this discrepancy was made to the contracting officer prior to completion of the contract. Thereupon, following completion of the contract, plaintiff notified the contracting officer that it had underbid the project because it was unaware the contract drawings were half-size. Plaintiff sought an additional $15,000 due to the allegedly defective specifications. The contracting officer issued by letter a final determination denying this request on January 16,1974, stating, inter alia,
Your bid of $27,234 was considered reasonable when compared with the Government’s estimate of cost; other *571 wise we would have inquired if you fully understood the contract requirements.
Plaintiff appealed to the Board, which denied the claim on February 26, 1975. The Board held that the discrepancy complained of was sufficiently obvious that an experienced contractor like plaintiff should reasonably be expected to encounter no confusion thereby. Also, it found the consequences of any confusion which may have actually occurred must be borne by plaintiff due to its failure to make a prebid inquiry of the patent ambiguity.
Receiving no assistance from the Board, plaintiff then requested from the Comptroller General of the United States reformation of the contract due to mistake in bid. Before the Comptroller General, plaintiff emphasized its belief that the Government erred in not seeking verification of plaintiffs bid. This claim for reformation was denied by decision of April 20, 1978, which stated in part: "In our view, the bid of $27,234 was in line with the $30,950 estimate and the next low bid of $37,833 so that verification was not required. * * * Further, there is nothing in the bid showing the error made and no evidence of actual notice to the contracting officer prior to award of an error in the bid. Therefore, we do not believe that the contracting officer acted unreasonably in not requesting verification of the bid. Accordingly, the request for reformation is denied.” [Citation omitted.]
Before us, plaintiff asks that we either reverse the Board decision or, outside the scope of Wunderlich Act review, 41 U.S.C. §§ 321, 322 (1976), reform the contract, with the strongest emphasis on the latter.
In reviewing the Board’s decision we, of course, are limited to a determination of whether the decision was "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.” 41 U.S.C. § 321. After our review of the Board decision, we can find no basis to upset it.
Plaintiff objects to the Board’s finding that it was under a duty to make a prebid inquiry of the measurements. Plaintiff asserts such a view is a misinterpretation of the *572 warning located on the drawings and of clause 6.1 of the contract.[2] We disagree with this objection because we find the Board’s decision regarding prebid inquiry was based on its own examination and evaluaton of the drawings themselves and the inherent duty owed by the plaintiff because of the obviousness of the error, not upon the warning or contract clause. Thus, plaintiffs argument that the relevant warning and contract clause only requires verification after the award is irrelevant. In light of the Board’s reasoned review, we believe its evaluation of the drawings, and the consequent determination that the discrepancy was obvious and thus placed on plaintiff the burden of prebid inquiry, was not arbitrary and was supported by substantial evidence. See Wickham Contracting Co. v. United States, 212 Ct. Cl. 318, 546 F. 2d 395 (1976).[3]
The bulk of plaintiffs argument is devoted to the notion of reformation of the contract. The defendant asserts that either the statute of limitations precludes such relief or that plaintiffs sole avenue for review is under the Wunder-lich Act because its claim was redressable before the administrative body. See, e.g., Northbridge Electronics, Inc. v. United States, 195 Ct. Cl. 453, 457-458, 444 F. 2d 1124, 1127 (1971); L. W. Foster Sportswear Co. v. United States, 186 Ct. Cl. 499, 502, 405 F. 2d 1285, 1287 (1969).
We do not rule on defendant’s objections because even assuming for the sake of argument that plaintiff can seek this relief, we find the record does not support a finding that would merit equitable relief in the form of reformation of the contract. See generally Bromion, Inc. v. United States, 188 Ct. Cl. 31, 35, 411 F. 2d 1020, 1022 (1969); Ruggiero v. United States, 190 Ct. Cl. 327, 335, 420 F. 2d 709, 713 (1970).
Plaintiff is entitled to recover on the theory of reformation only if the Government’s representatives knew or should have known of the mistake at the time the bid was *573 accepted. Space Corp. v. United States, 200 Ct. Cl. 1, 8-9, 470 F. 2d 536, 540 (1972); Wender Presses, Inc. v. United States, 170 Ct. Cl. 483, 485, 343 F. 2d 961, 962 (1965). Plaintiff did not notify defendant of the mistake until after completion of the contract, and there is no other evidence convincing us that the defendant possessed such actual knowledge of plaintiffs mistake. Thus, the resolution of this issue is tied into whether defendant should be charged with knowledge of plaintiffs mistake. The test for imputed knowledge in cases dealing with mistakes in bids is whether, under all the facts and circumstances of the case, "there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer * * *." Chernick v. United States, 178 Ct. Cl. 498, 504, 372 F. 2d 492, 496 (1967). Incorporated in this problem is the question of whether defendant was obliged to make inquiry into the accuracy of plaintiffs bid, which inquiry would have resulted in the defendant obtaining the requisite knowledge.
Plaintiff, relying on case law (e.g., Wender Presses, Inc. v. United States, supra) and regulation (41 C.F.R. § 1-2.406-1), asserts that the defendant was under a duty to inquire and verify plaintiffs bid. This is based on the fact that plaintiffs bid was 39 percent lower than the next lowest bid. See note 1, supra.
It does not necessarily follow, however, that a variance in bids inevitably leads to a finding of imputed knowledge on the part of the defendant. Compare Jansen v. United States, 170 Ct. Cl. 346, 357, 344 F. 2d 363, 370 (1965) (100 percent variance; no imputed knowledge), and Wender Presses, Inc. v. United States, 170 Ct. Cl. at 488, 343 F. 2d at 964 (125 percent variance; no imputed knowledge). In this case, plaintiffs bid is very close to the Government’s estimate ($27,234 versus $30,950; a 12 percent variance). Also, plaintiff was an experienced contractor and it would not be unreasonable for the contracting officer to assume that plaintiffs bid was the result of the efficiencies generated by expertise.
Furthermore, we reject plaintiffs argument that the defendant is at fault for not notifying plaintiff that it raised its estimate of project costs. Plaintiff asserts such a *574 notification would have alerted it to its own error. As we held above, however, nothing in the comparison between plaintiffs and defendant’s respective estimates suggests an error; hence, this last argument is also insufficient to justify a reformation.
Finally, plaintiffs arguments do not explain away the simple fact that the half-size nature of the drawings is obvious from a comparison of the dimensions listed to the scale printed on the drawings. Because of this obviousness plaintiff had the duty to make a prebid inquiry. Wickham Contracting Co. v. United States, 212 Ct. Cl. at 323-324, 546 F. 2d at 398. And we note it has been stated that in the case of an obvious error it is the duty of the contractor to bring the discrepancy to the Government’s attention, "if he intends to bridge the crevasse in his own favor.” Beacon Construction Co. v. United States, 161 Ct. Cl. 1, 7, 314 F. 2d 501, 504 (1963); see HRF Construction Corp. v. United States, 192 Ct. Cl. 912, 428 F. 2d 1267 (1970). Thus, under all the circumstances here present, the Government was not under a duty to verify plaintiffs bid and we impute no knowledge of plaintiffs error to the defendant. Therefore, we refuse to reform the contract.
accordingly it is ordered that defendant’s motion for summary judgment is granted, plaintiffs motion for summary judgment is denied, and the petition is dismissed.

 The unsuccessful bids were for $37,833; $51,000; and $72,600.

 Clause 6.1 of the contract is as follows:
"6.1 All dimensions shown of existing work and all dimensions required for work that is to connect with work now in place, shall be verified by the Contractor by actual measurement of the existing work. Any discrepancies between the contract requirements and the existing conditions shall be referred to the Contracting Officer before any work affected thereby has been performed.”

 We also reject plaintiff’s objection that the Board’s decision regarding obviousness was "hindsight.” This type of review is an inescapable fact of life in our system.