Richard C. FADELEY, Jr., d/b/a Allst-eel Products Company, Inc., Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 95–87C.

United States Claims Court.

Nov. 1, 1988.

Herbert W. Hamilton, Columbia, S.C., attorney of record, for plaintiff. Whaley, McCutchen, Blanton & Rhodes, of counsel.

Joseph A. Kijewski, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION

NAPIER, Judge:

This suit arises out of a contract between Allsteel Products Company, Inc. ("Allsteel"), as the principal and contractor, and the Department of the Army. Allsteel seeks reformation of the subject contract in the amount of $42,678.72, based on a mistake in its bid of the same amount. The parties have stipulated the relevant facts of the case and have made cross-motions for summary judgment.

### Facts

The parties' agreed statements of uncontroverted facts, insofar as pertinent, are as follows. On September 25, 1985, the Office of the Directorate of Contracting, Fort Jackson, South Carolina, requested that Allsteel submit a bid for Solicitation No. DABT47–85–B–0102, a project involving the repair of latrine facilities. Allsteel complied with the Government's request, and bid opening took place 2 days later, on September 27, 1985.

Of the two bids received by the Government, Allsteel's was the lower by 13 percent, and was $575 less than the Government's estimate for the job. Specifically, Allsteel's offer amounted to $370,000 while the Government's estimate for the project was $370,575, and the only other bid, submitted by Energy Management Company, was in the amount of $418,000.

Those present at the bid opening on September 27, 1985, were Juanita H. Mercer, Contract Specialist for the Government; Coles Dwight, Estimator/Project Manager for Allsteel; and Mr. Hutto, an Energy Management Company employee. Upon opening the bids, Ms. Mercer did not consider the 13 percent price differential significant enough to warrant a bid verification. Nor did any other unusual objective factors suggest to her that bid confirmation may be necessary. Ms. Mercer did notice, however, that Mr. Dwight of Allsteel appeared uncomfortable with the difference between the two bids. She thereupon requested that Mr. Dwight confirm Allsteel's bid. Mr. Dwight was provided with a blank sheet of paper upon which to verify his company's offer. Later that same day, he returned a signed confirmation of Allsteel's bid.

The subject contract was awarded to Allsteel the following Monday, on September 30, 1985, somewhat more expeditiously than would have been the case were not the fiscal year coming to a close. On or about October 1, 1985, Allsteel discovered a mistake in its bid whereby a price for 6,720 square feet of ceramic tile had been omitted. The parties stipulate that plaintiff's bid mistake was caused by an error in estimating the materials necessary for the project. Allsteel claims that it would have charged the Government $42,678.72 for this tile. Two weeks later, on October 15, 1985, Allsteel notified the Government of its mistake and requested permission to withdraw its bid. The Government denied this request. Allsteel then submitted a request for an increase in the contract price of $42,678.72, the amount of the mistake. On February 27, 1986, the contracting officer issued its final decision denying Allsteel's claim for said amount. Upon reconsideration of the claim and supporting documentation, the Government informed Allsteel on May 28, 1986, that the error was a unilateral mistake in estimating the materials necessary for the project, and as such was not compensable.

By letter of June 6, 1986, Allsteel again protested the contracting officer's adverse

decision, and several weeks later on June 27, 1986, notified the Government that it was commencing work under protest. Allsteel timely filed a complaint with this Court on February 24, 1987. The Court has jurisdiction to entertain plaintiff's suit under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. § 608.[1]

### Discussion

Where the parties have based their joint motion for summary judgment upon a statement of undisputed facts and exhibits, which leaves the Court with no question as to any material fact, summary judgment is appropriate.[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Aydin Corp. v. United States*, 229 Ct.Cl. 309, 322, 669 F.2d 681, 689 (1982).

Plaintiff presents three alternative arguments for relief to the Court. Plaintiff first argues that the price omission was a mutual mistake, made jointly by plaintiff and the Government. Secondly, plaintiff contends that even if the mistake were made unilaterally by plaintiff, the Government representative knew or should have known of it. As a last alternative, plaintiff argues for the application of equitable principles. In this argument, plaintiff attempts to convince the Court that good faith and fair dealing require monetary relief where, as here, the Government has rushed plaintiff into bid submission and subsequent verification.

Defendant submits that plaintiff's bid mistake was unilateral, a mistake of which the Government neither knew nor had reason to know. The Government advocates the application of a "reasonableness" standard for the Court's determination of whether the Government official should

have been alerted to Allsteel's bid mistake. Furthermore, according to defendant, the bid verification procedures which took place upon bid opening were appropriate under the circumstances.

■ A mutual mistake is an error for which each party is partly responsible, or, a unilateral mistake which the other party knew or had reason to know of prior to consummation of the contract. Doke, *Mistake In Government Contracts—Error Detection Duty of Contracting Officer*, 18 Sw.L.J. 1 (1964) [hereinafter referred to as "Doke".] Plaintiff claims that a mutual mistake occurred here, where the Government, anxious to appropriate funds before the end of the fiscal year, caused plaintiff to speed up its bidding process, resulting in the omission of the price for the ceramic tile.

■ Plaintiff is unable to cite the Court to any law where a mistake has been found to be "mutual" and the Government held responsible for a bid error when, in order to meet contractual deadlines imposed by the end of the fiscal year, the Government allows little time for a bidder to prepare and submit its bid. To the contrary, it is a contractor's sole responsibility to exercise due care during bid preparation. If a contractor is not certain that his bid is true and correct, under no circumstances should he represent that it is, by signing the bid.

■ There is no evidence that the Government was directly responsible for Allsteel's bid mistake. At issue, then, is whether the Government knew or should have known of the error, and, thus, was indirectly responsible for it.

Plaintiff correctly calls upon the Court to consider all factors surrounding the bid opening while making this determination:

1. Although the parties have not alleged jurisdiction or lack thereof, the Court finds that it has authority to hear plaintiff's claim under the Tucker Act and the Contract Disputes Act, 28 U.S.C. § 1491 and 41 U.S.C. § 608, respectively.

2. The parties' initial version of undisputed facts simply recited "On or about October 1, 1985, Allsteel discovered a mistake in its bid whereby a price for six thousand seven hundred twenty

(6,720) square feet of ceramic tile was omitted from the bid." The Court ordered the parties to submit a more comprehensive stipulation of facts detailing the nature of the bid mistake. A joint stipulation was subsequently submitted, stating that "Allsteel's bid mistake was the result of an error in estimating the materials necessary for the project."

[T]he test here, as in so many areas, must be that of reasonableness, i.e., whether under the facts and circumstances of "the particular case there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer. . . ."

*Wender Presses, Inc. v. United States,* 170 Ct.Cl. 483, 486, 343 F.2d 961, 963 (1965), *quoting* Welch, *Mistakes in Bids,* 18 Fed. B.J. 75, 83 (1958) [hereinafter referred to as "Welch"]; *Chernick v. United States,* 178 Ct.Cl. 498, 504, 372 F.2d 492, 495 (1967).

Plaintiff contends that several factors impute knowledge of the mistake to the contracting official, *e.g.,* (1) the 13 percent price disparity between bids; (2) the Government's imposition of unreasonable time constraints for both bid preparation and verification; and (3) concern expressed at the time of bid ·opening. Plaintiff asserts these factors should have alerted the contracting official to a possible bid error.

■ Perhaps most relevant to the controlling issue of whether the Government official should have known of plaintiff's bid mistake is the nature of the mistake itself. A clerical or arithmetical error on the face of the bid would certainly suggest to a contract representative the possibility of a mistake. On the other hand, an error in the estimation of labor costs or necessary materials is the product of faulty or poor judgment, and normally does not call attention to itself. In the latter situation, the resulting contract incorporates one party's subjective understanding which the other party cannot reasonably be expected to be aware. A contract containing such an error may not be amended to reflect the actual intentions of the party who erred. *United States v. Hamilton Enter.,* 711 F.2d 1038, 1048 (Fed.Cir.1983), *citing Aydin Corp. v. United States,* 229 Ct.Cl. 309, 315, 669 F.2d 681, 689 (1982); *American Ship Bldg. Co. v. United States,* 228 Ct.Cl. 220, 227, 654 F.2d 75, 80 (1981); *National Line Co. v. United States,* 221 Ct.Cl. 673,

685, 607 F.2d 978, 984 (1979); *Tony Downs Foods Co. v. United States,* 209 Ct.Cl. 31, 41–42, 530 F.2d 367, 373 (1976). *See Sanders–Midwest, Inc. v. United States,* 15 Cl.Ct. 345 (1988).

Plaintiff does not claim that the bid contained a clerical or mathematical mistake. Certainly, an examination of Allsteel's bid does not reveal that such a mistake was made. There are no mathematical, clerical, or other obvious errors apparent on the face of the bid. Nor does plaintiff indicate that it misunderstood the contract specifications, a type of mistake for which compensation is sometimes afforded. *See BCM Corp. v. United States,* 2 Cl.Ct. 602 (1983). Rather, a careful review of plaintiff's bid, and consideration of the parties' stipulation as to how the mistake was made,[3] suggests that plaintiff was simply negligent in its estimation of the materials necessary for the project. Such a mistake clearly falls within the category of faulty or poor judgment, a type of unilateral mistake for which relief is not granted. *Aydin Corp., supra,* 229 Ct.Cl. at 314–15, 669 F.2d at 685; *Ruggiero v. United States,* 190 Ct.Cl. 327, 335, 420 F.2d 709, 713 (1970).

Plaintiff maintains that the 13 percent price difference in the two bids that were submitted should have raised a question in the mind of the Government representative as to the correctness of Allsteel's bid. To support this proposition plaintiff cites one unpublished Comptroller General decision of 1962. A review of the case law which serves as precedent for this Court, however, shows that other cases have also dealt with the situation where two or more bids submitted to the Government vary in price. In *Aydin Corp.,* the Court of Claims found that because plaintiff's bid was close to the Navy's estimate for the job, a 40 percent disparity between bids did not put the Government on notice of a possible error when only two bids were submitted. *Aydin Corp., supra,* 229 Ct.Cl. at 318, 669 F.2d at 687. Similarly, in *Bromley Contracting Co. v. United*

---

3. In their joint stipulation filed September 26, 1988, the parties describe Allsteel's bid mistake as "the result of an error in estimating the materials necessary for the project."

*States*, 227 Ct.Cl. 569, 573, 652 F.2d 70 (1981), a 39 percent price variance did not serve to alert the contract representative of bid problems. The *Bromley* decision cited earlier Court of Claims cases where 100 percent variance and 125 percent variance in bid prices did not impute knowledge to the defendant. *Id.* In *Bromley*, as here, plaintiff's bid price was very close to the Government's estimate, with a 12 percent variance. The difference between Allsteel's bid and the Government's estimate was less than one percent.

■ Allsteel's bid price was not even one percent lower than the Government's estimate, and merely 13 percent less than the other bid submitted. Such minimal price disparities do not in and of themselves put the Government on notice that an error was made. Instead, relatively slight deviations may serve to reassure the contracting representative that all was well. *See Bromley, supra*, at 573, 652 F.2d 70. As the Court of Claims in *Aydin Corp.* stated:

> The mere disparity between bids does not automatically lead to the conclusion that the test for constructive notice has been satisfied.

*Id.*, 229 Ct.Cl. at 317, 669 F.2d at 686, *citing Wender Presses, supra; United States v. Sabin Metal Corp.*, 151 F.Supp. 683 (S.D.N.Y.1957), *aff'd*, 253 F.2d 956 (2d Cir.1958); *Alabama Shirt & Trouser Co. v. United States*, 121 Ct.Cl. 313 (1952). The *Aydin Corp.* Court went on to hold that price disparities alone do not amount to constructive knowledge of a mistake where there are other factors that would negate the inference of error. *Id.*, 229 Ct.Cl. at 317, 669 F.2d at 687, *citing Bromley Contracting Co., supra; Wender Presses, supra; Allied Contractors, Inc. v. United States*, 159 Ct.Cl. 548, 310 F.2d 945 (1962). Here, the closeness in Allsteel's bid price to the Government's estimate served to counteract the 13 percent difference between the bids. As the *Aydin Corp.* Court stated, "[r]eliance on a government estimate discharges the contracting officer's error detection duty as regards constructive notice of error based on bid disparity, if such estimate is in line with the bid

alleged to be mistaken." *Id.*, 229 Ct.Cl. at 321, 669 F.2d at 688–89, *citing Allied Contractors, supra.*

Allsteel also contends that the Government's rush to spend appropriated funds before the end of the fiscal year compelled Allsteel to hurry through the bid preparation process in order to meet Government time limitations. Plaintiff suggests that because the Government imposed unreasonable time constraints, it should not have been surprised that a mistake was made. Allsteel argues that urgency on the part of the Government does not justify a lower standard of care, citing *Chernick, supra*, 178 Ct.Cl. at 502, 372 F.2d at 495. Here, however, it is not the Government who has omitted a price from the bid, but Allsteel.

Judge Nichols, writing in *Aydin Corp.*, states the standards of care as follows:

> We are not unmindful of the fact that plaintiff is here seeking to impute to the contracting officer knowledge of plaintiff's "actual contractor cost" for the purposes of making [its] estimate, and by virtue of this litigation, seeking to relieve itself of its own "estimate," the instant bid price, in spite of the fact that plaintiff was, or should have been, in a better position to ascertain its own "actual costs." * * * The contracting officer cannot be held to a higher standard in making her estimate than the bidder, who for obvious reasons is in a better position to ascertain the facts upon which to base its estimate.

*Aydin Corp., supra*, 229 Ct.Cl. at 320, 669 F.2d at 688.

■ Just as time constraints do not justify carelessness on the part of the Government, they do not excuse a contractor from exercising diligence in the procurement process. Although the time constraints may have been the reason Allsteel underestimated the materials necessary for the job, time limitations do not relieve a contractor from submitting an accurate bid. Therefore, the hurried fashion in which this particular procurement may have been conducted does not alone call upon the contracting official to suspect that a bid error

was made and thereupon request bid verification.

Allsteel contends that the Government's method of bid verification was improper. Inadequate time for bid verification, lack of notice as to a particular error suspected, and providing a blank sheet of paper as the verification form are the main thrust of plaintiff's arguments here. Although not explicitly argued, plaintiff implies that since Allsteel's representative showed dismay when the bids were opened, the Government official in charge should have assumed a particular error and pursued its correction.

The record does not indicate how much time the Government allowed Allsteel to verify its bid. The parties' stipulation merely declares that the bid was confirmed the same day the request for verification was made.[4] Nothing in the record suggests that Allsteel was restricted from using September 28th and 29th to reconsider its bid, in light of the fact that the contract was not awarded until September 30, 1988. While plaintiff complains that inadequate time was *given* for a proper bid verification, it appears from the record that inadequate time was *taken* for bid verification.

Allsteel claims that Ms. Mercer should have informed Mr. Dwight as to what she believed was the mistake when she requested bid verification. The parties agree that the bid disparity did not alert Ms. Mercer as to any mistake, nor did she note any obvious errors on the face of the bid. The only reason Mrs. Mercer requested bid confirmation was to respond to the look of dismay she noticed on Mr. Dwight's face upon bid opening.[5] Having no actual or imputed knowledge of a bid mistake thus far, Ms. Mercer was not in a position to provide Mr. Dwight with particularities as to the nature of the error. As the Court in *Wender Presses, Inc.*, recognized "[m]istake-making contractors will naturally seek to impose upon such officials a rather high level of brilliance for the purpose of detecting the error." *Id.*, 170 Ct.Cl. at 486, 343 F.2d at 963. Indeed, to require a contract specialist to gain insight into the makings of a bid by the look on a bidder's face would be extending her professional responsibilities beyond any reasonable interpretation of her job description duties.

Plaintiff claims that the blank sheet of paper provided to Mr. Dwight of Allsteel was an incorrect way to verify the bid. Proper verification of a bid is based on full disclosure by the contracting official of any suspicions he or she has concerning the accuracy of a bid. *See BCM Corp., supra,* at 610; Doke, 18 Sw.L.J. at 35–36. As discussed previously, Ms. Mercer had no actual knowledge of and no reason to suspect a mistake in Allsteel's offer. Therefore, she was not compelled to request verification of Allsteel's bid. In that she did, she was merely reacting to the look of concern on Mr. Dwight's face. Apparently Mr. Dwight himself was skeptical at this point as to the correctness of the company's bid, for reasons which Ms. Mercer was unaware. Ms. Mercer, upon noticing a look of dismay on Mr. Dwight's face at the bid opening, and allowing him to verify his bid, provided full and fair opportunity for exposing plaintiff's dilemma. For this purpose, a blank sheet of paper upon which Allsteel could verify its bid sufficed. The circumstances surrounding bid opening here do not warrant deviation from the general rule that "after a request for verification as to the price intended to be quoted by a bidder, the contracting officer is under no obligation to make further inquiry as to the correctness of the bid." Welch, 18 Fed.B.J. at 83–84.

Plaintiff's last argument for relief rests on equitable principles, i.e., that it is only fair and just that the Government reform

---

4. The parties' "Stipulation of Facts" dated June 16, 1988, states that "Ms. Mercer provided Mr. Dwight [of Allsteel] with a blank piece of paper upon which to confirm Allsteel's bid. Sometime that same day, Mr. Dwight returned a signed confirmation of Allsteel's bid."

5. The parties have stipulated that "[n]ormally, if there weren't a great difference in the bids, the government would not ask for confirmation; however, *because Mr. Dwight appeared uncomfortable with the difference between the two bids,* Ms. Mercer asked Mr. Dwight to confirm Allsteel's bid." (Emphasis added.)

the contract. In fact, all of plaintiff's arguments are based upon equitable considerations, which, in order to effectuate contract reformation in this particular case, require actual or imputed knowledge on behalf of the Government.

As defendant stated in its brief, *Carrier Corp. v. United States*, 6 Cl.Ct. 169 (1984), succinctly summarizes the law for post-award relief for a unilateral bid mistake:

> The equitable remedy of reformation to correct a unilateral mistake in a plaintiff's bid is available only if the government knew or should have known of a mistake in a bid costly to the bidder.

*Id.* at 173, *quoting Burnett Electronics Lab, Inc. v. United States*, 202 Ct.Cl. 463, 472, 479 F.2d 1329, 1333 (1973) (other citations omitted).

In light of the circumstances surrounding Allsteel's bid mistake, it cannot be said that the contract specialist who examined the bid should have noticed that one element of the bid was missing. To the contrary, Ms. Mercer was not under either actual or constructive knowledge of the mistake.

The granting of equitable relief is based upon a concern with the overreaching of a contractor by a contracting officer who suspects a mistake in the bid and is willing to accept it nevertheless. That is not the situation here. Therefore, Federal Acquisition Regulation 14.406–4 (1986), which allows for the reformation of a contract to reflect the correction of a prior, unilateral bid mistake when the contracting officer is charged with knowledge of that mistake is not applicable in the instant case.

### Conclusion

Considering all aspects of this case on the stipulated record as presented by the parties, recovery is not possible. The parties agree that there is no genuine issue as to any material fact and neither seeks a trial. Plaintiff has not shown that it would be able to·prove more at trial than that which has been submitted on the record herein presented. Therefore, plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted, and plaintiff's complaint must be dismissed.

The Clerk is directed to dismiss the complaint. No costs.