R.J. SANDERS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 751–86C.

United States Claims Court.

Sept. 30, 1991.

As Corrected Oct. 28, 1991.

---

Thomas W. Heald, Providence, R.I., for plaintiff.

John S. Groat, with whom were M. Susan Burnett, Asst. Director, and David M. Cohen, Director, Commercial Litigation Branch and John R. Bolton, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Wash-

ington, D.C., for defendant. Jim Fender, Dept. of the Navy, of counsel.

## OPINION

SMITH, Chief Judge:

This action comes before the court on defendant's Renewed Motion for Summary Judgment. After an initial round of briefing on a Motion for Summary Judgment by defendant the court allowed plaintiff to amend its original complaint. Defendant then renewed its Motion for Summary Judgment.[1]

Plaintiff seeks compensation for unanticipated costs encountered pursuant to a contract with the Navy to repair a boiler. Plaintiff also seeks to prevent the Navy from imposing liquidated damages for the delay in contract completion caused by additional work.

For the reasons set forth below, defendant's motion is granted in part and denied in part.

## FACTS

In January 1986, the Department of the Navy solicited bids for repairs to a barge-mounted steam boiler at the Portsmouth Naval Shipyard, Portsmouth, New Hampshire (Shipyard). The bid solicitation package contained plans and drawings supplied by the Shipyard. The solicitation identified the type of boiler to be repaired but did not specify the number of tubes which were to be replaced in that particular boiler. The drawings included in the package were not of the boiler which was to be repaired.

The bid of plaintiff, R.J. Sanders, Inc. (Sanders) for $129,843.00 was accepted. On March 5, 1986, Sanders and the Navy entered into Contract Number N00102–86–C–3802 with an anticipated completion date of July 1, 1986. The seven other bids received by the Navy ranged from $157,-887.00 to $225,225.22, with the government's estimate being $190,000.00.

Upon commencing work on the boiler, Sanders discovered that it had underesti-

mated the number of boiler tubes to be replaced. On the basis of the drawings supplied in the bid solicitation project Sanders had calculated that the boiler had 959 tubes. The boiler actually contained 1233 tubes. Sanders requested a modification of the contract, which the Navy denied. Sanders completed the work on the boiler, replacing the 1233 tubes, and allegedly incurred $35,209.00 in costs beyond what it had anticipated.

On April 18, 1986, the parties entered into a modification of the contract unrelated to the retubing. While negotiating the price for Contract Modification P00001, Sanders informed the Navy's Alfred L. Romano that it would complete the additional unrelated work during lulls in the retubing process. It was Sanders' understanding that the parties had agreed to a "wait-and-see approach," and that the duration as well as the need for an extension to the original contract would be determined as Sanders' performance progressed.

On June 3, 1986, Sanders requested an extension on the contract completion date, which the Navy denied. Sanders maintains that it understood that the contract completion would be extended if the need arose due to the additional work called for under the April 18, 1986 modification. The Navy contends that the April modification did not contemplate such an extension. The modification contains no express reference to an extension.

On July 24, 1986, the boiler underwent a hydrostatic pressure test. The test was a success, and Sanders alleges that the contract was substantially completed at that time. Several defects in the boiler were cited in the government inspector's "barge boiler punch list," however, and the boiler was not fully operational until Sanders corrected the deficiencies, some time after August 5, 1986. Pursuant to the contract's liquidated damages clause, the Navy assessed $17,500 in liquidated damages against Sanders, or $500 per day for the 35 days completion was delayed.

---

1. The court has received defendant's Renewed Motion and plaintiff's Opposition. The court granted extensions to defendant for time to file

a reply however defendant failed to do so. At this point the court deems that defendant has waived its right to reply.

## DISCUSSION

Sanders claims it is entitled to an equitable adjustment of $35,209.00 which represents the additional amount it expended because of the additional tubes. Sanders presents two alternative theories of recovery. First, Sanders argues that the bid specifications and drawings were defective. Alternatively, Sanders argues that, because of the disparity between Sanders' bid and both the government's estimate and the bids of the other contractors, the contracting officer should have known that a mistake had been made and should have requested verification of Sanders' bid.

Sanders also claims that it is entitled to an equitable adjustment of thirty days and damages of $17,500.00. Two theories of liability are presented for this claim as well. First, Sanders claims that, as a result of the defective specifications and drawings, Sanders was unable to complete its contract on time and was improperly assessed liquidated damages of $17,500.00 for 35 days of delay after its request for an extension was denied. Alternatively, Sanders argues that the contract modification requiring additional work resulted in its being unable to complete the contract on time and that its request for an extension of 30 days was improperly denied.

In an alternative claim, Sanders believes it is entitled to $5,500.00 in damages. This represents the amount assessed against Sanders as liquidated damages for the period between July 24 and August 5, 1986. Sanders claims the contract was actually completed on July 24 and that the contracting officer improperly determined that the completion date was August 5.

## Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). The moving party has the burden of establishing the absence of any dispute over a genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

To survive a motion for summary judgment, the non-movant must proffer evidence sufficient to show that there is a genuine issue of material fact in dispute. A dispute is genuine only if, on the record as a whole, a reasonable trier of fact could resolve a factual matter in favor of the non-movant. *Sweats Fashions v. Pannill Knitting Co.*, 833 F.2d 1560 (Fed.Cir.1987). The substantive law applicable to the case determines what facts are material. Only disputes over facts that might affect the outcome of the suit will preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### The 274 Unanticipated Tubes

*Reliance on Drawings*

A contractor may rely on government-furnished specifications only if such reliance is reasonable. *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 917 (Fed.Cir.1984). Whether or not the drawings contained representations as to how many tubes were in the boiler is a matter of contract interpretation, and thus, a matter of law. *Id.* at 916. The test for whether the specifications represented the number of tubes to be replaced is whether a reasonable prudent contractor would have relied on them. *Id.*

The Navy offers several affidavits to show that the number of tubes in the boiler could have been obtained in a number of ways, including telephoning boiler manufacturers, consulting reference books, and conducting an on-site inspection. Sanders attended an offeror's conference and declined to fully inspect the boiler to determine the number of tubes. Sanders has not countered these allegations to demonstrate a genuine dispute of fact as to whether the information could have been obtained in other ways.

Sanders asserts that a complete count of the tubes in the boiler was not possible because certain areas were not available for inspection during the site visit, but other competing bidders were seemingly able to approximately determine the correct

number of tubes. Telephone conversation records indicate that at least three unsuccessful bidders obtained the correct number of tubes for the particular model directly from boiler manufacturers or sellers. The contract clauses specifically and correctly identified the boiler to be worked on. Sanders could have calculated the number of boiler tubes which had to be replaced from various sources. Sanders has failed to demonstrate that it made any reasonable calculation or inquiry.

█ Contractors who either misread or fail to read the contract specifications have no entitlement either to an equitable adjustment or to a reformation of the bid, when required to perform the work as set forth in the contract documents. *Liebherr Crane Corp. v. United States*, 810 F.2d 1153 (Fed.Cir.1987). Sanders' mere subjective reliance upon the bid specifications is insufficient to establish its entitlement to an equitable adjustment. Sanders has the burden to establish that its reliance upon the bid specifications was reasonable. *P.J. Maffei Bldg. Wrecking Corp.*, 732 F.2d at 913. The Navy did not misstate the work and merely required Sanders to perform the work as set forth in the contract. Accordingly, since Sanders has not met its burden, it has no entitlement to further compensation upon the basis of the specifications.

*Mistake in Bid* [2]

█ As to Sanders' argument regarding the disparity in bids the variance in bid prices between Sanders' and its competitors' bids was not substantial enough to give the contracting officer constructive notice that Sanders had made an error in

its bid preparation. "[O]ther than in a case of mutual mistake, a contractor may obtain a remedy from the Government for a mistaken bid after the contract has been awarded only if the contracting officer knew or should have known of contractor's unilateral mistake at the time the bid was accepted." *Bromley Contracting Co. v. United States*, 794 F.2d 669, 671–72 (Fed. Cir.1986). In order for Sanders to prove that the discrepancy between bid prices placed the contracting officer on constructive notice of a mistake, it must prove that "under all the facts and circumstances of the case, 'there were factors which reasonably should have raised the presumption of error in the mind of the contracting officer.'" *Aydin Corp. v. United States*, 669 F.2d 681, 229 Ct.Cl. 309, 317 (1982) (quoting *Chernick v. United States*, 372 F.2d 492, 178 Ct.Cl. 498, 504 (1967)). "The mere disparity between bids does not automatically lead to the conclusion that the test for constructive notice has been satisfied." *Id.*

The contract in this case can only be reformed if it was "based upon a bid containing clear cut clerical or arithmetical error, or misreading of the specifications." *Bromley Contracting Co.*, 794 F.2d at 672. A contractor cannot recover for a mistake in judgment. *Id.* Sanders has not put forth sufficient evidence to permit this court to find that its error is anything more than a mistake in judgment.

In the instant case, the second lowest bid, $157,887.00, was only 18 percent greater than Sanders' successful bid of $129,-843.00. In fact, the Navy's estimate was only 17 percent higher than the second lowest bid, and greater than six of the eight bids. Such a disparity would not necessarily cause a contracting officer to

2. Defendant initially questions whether this court has jurisdiction to address this claim since it was not raised before the contracting officer. "In determining whether a claim is properly before this court for the purpose of de novo review under the Contract Disputes Act (CDA), the Claims Court has generally looked to its 'operative facts.' If the complaint brought here is based on the same set of operative facts underlying the claim presented to the contracting officer, then this court has jurisdiction under the CDA." *Cerberonics, Inc. v. United States*, 13 Cl.Ct. 415 (1987).

Sanders adequately raised the issue with the contracting officer, and is not barred from asserting its claim. While never stating precisely "constructive notice of mistake," Sanders' claim did establish the factual background upon which it rests, along with the amount claimed due. Sanders is not required to state its claims with legal specificity, but merely to provide adequate notice to the contracting officer of their existence, amount, and general nature. Sanders has done this.

suspect any mistake. Sanders' bid of $129,843.00, along with other bids ranging from $157,887.00 to $225,225.22, would not have raised the "presumption of error" in the mind of a reasonable contracting officer.

In *Aydin Corp.*, a 40 percent disparity between bids did not put the government on notice of a possible error when plaintiff's bid was close to the government's estimate. 669 F.2d 681, 229 Ct.Cl. at 318. In *Bromley Contracting Co. v. United States*, 652 F.2d 70, 227 Ct.Cl. 569, 573 (1981), a 39 percent price variance did not serve to alert the government of bid problems when there was a 12 percent variance between plaintiff's bid price and the government's estimate. *See also Wender Presses, Inc. v. United States*, 343 F.2d 961, 170 Ct.Cl. 483 (1965) (125 percent variance, no imputed knowledge); *Jansen v. United States*, 344 F.2d 363, 170 Ct.Cl. 346, 357 (1965) (100 percent variance, no imputed knowledge).

Sanders' claim did vary 32 percent from the Navy's estimate. However, the majority of the bids were lower than the Navy's and a reasonable contracting officer, as a matter of law, would not necessarily have been alerted to a mistake in Sanders' bid. The government did not have constructive notice of Sanders' mistake, and no grounds exist for the reformation of the contract.

Extension due to Contract Modification[3]

■ Pursuant to express provisions of the April 18, 1986 contract modification, Sanders was entitled to $9,750.00 in compensation for performing additional unrelated steel work. Viewing the facts in the light most favorable to Sanders, it seems that Sanders and the Navy had an agreement to agree that more time may be needed, but never in fact agreed. Therefore there was no legal right to any additional time, and Sanders' July 1, 1986 completion date was in no way modified.

Sanders does not allege that it ever received a promise for an extension of time. Sanders concedes that no government au-

thority agreed that an extension of time would be granted. It was Sanders' "understanding that the parties had agreed to a wait-and-see approach" regarding additional time. Sanders claims it understood after its discussion with Alfred L. Romano, a contract specialist for the Navy, that a time extension would be adjusted accordingly if, at a later date, a need for an extension was demonstrated. In this case the parties did not agree that an extension was necessary. One party's unilateral understanding is insufficient to modify the express terms in a contract. Sanders' performance was due July 1, 1986.

Contract Completion Date

■ The final issue is whether a question of fact exists regarding the date the contract was actually completed. Sanders seeks, in the alternative to the court's finding the existence of an extension agreement, the reduction of the liquidated damages by $5,500.00. Sanders argues that even if there were no extension, the contract was completed by July 24, 1986 with the satisfactory completion of the hydrostatic pressure test. The Navy contends that numerous defects in the work required by the contract rendered the boiler inoperable, and were not corrected by Sanders until some time after August 5, 1986. Thus the Navy imposed $17,500.00 in liquidated damages on Sanders for its 35–day delay in contract completion.

The Navy's selection of August 5, 1986 as the completion date is based upon a factual determination. Since Sanders cites facts that contradict the Navy's determination, a material factual dispute exists. A dispute of material fact, such as in the instant case, is not an appropriate issue for the granting of summary judgment.

The Navy insists that as of July 24, 1986, the Navy only had a nonoperational boiler with tubes that had been hydrostatically tested, and thus did not leak. The Navy argues that it obviously contracted for an operational boiler, which had not been de-

---

**3.** Having found above that Sanders is not entitled to recover for the expenses incurred because of the alleged additional tubes, it follows that Sanders also is not entitled to any extra time to complete the job.

livered as of July 24, 1986 because after the successful hydrostatic test, the boiler required additional welding, insulating, and trim work. The Navy's argument rests on the assumption that it would not have contracted with Sanders to merely install boiler tubes and have them hydrostatically tested.

Sanders counters the Navy's argument with the technical specifications in the bidding documents which provided that the hydrostatic test would be performed "after completion of the tube work." Accordingly, Sanders asserts that successful completion of the hydrostatic test amounts to substantial performance of the contract. In addition, Sanders contends that industry custom supports a finding that work cited in the "barge boiler punch list" is trivial, mere "clean up" work. Sanders claims the existence of "barge boiler punch list" items is a common occurrence in the industry. Thus, Sanders reasons that a contract for the retubing of a boiler is substantially performed after a successful hydrostatic test.

Both the determination of the date of contract completion and the determination of whether the "barge boiler punch list" items are significant enough to interfere with a finding of contract completion are factual issues. To counter a motion for summary judgment, plaintiff must identify a genuine issue of material fact. With respect to the completion date issue, Sanders has done this.

## CONCLUSION

In the absence of any representation in the contract with regard to the number of boiler tubes, Sanders has no equitable adjustment claim upon the basis that it was required to replace more boiler tubes than set forth in the contract. Sanders is also not entitled to recover under the theory of mistake, as the disparity in bids was not great enough to alert the contracting officer to make further inquiry. Defendant's motion for summary judgment on this claim is GRANTED.

Having expressly agreed to perform additional work in accordance with the terms of Contract Modification P00001, Sanders cannot claim an equitable adjustment based upon that same additional work. Summary judgment is GRANTED for defendant on Sanders' claim for a time extension.

An issue of material fact exists as to when Sanders' work was substantially completed, and therefore defendant's motion for summary judgment on this claim is DENIED.

The parties are to confer within the next 60 days and submit to the court a joint status report suggesting further proceedings by December 6, 1991.

IT IS SO ORDERED.