**Jack WALSER d/b/a Jack Walser Construction Company,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–96C.**

United States Claims Court.

Aug. 2, 1991.

John W. Kelly, III, Selma, Ala., for plaintiff.

Lisa B. Donis, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

MARGOLIS, Judge.

This government contracts case is before the court on the defendant's motion for summary judgment. The plaintiff contracted with the government to clear debris from a stretch of land alongside a river in West Virginia. During the course of performance, the plaintiff claims that it encountered differing site conditions, including varying water levels in the river, a state ban on burning tires, and beavers and people cutting down trees. The plaintiff alleges that these differing site conditions caused it to perform extra work and incur additional costs, and seeks an equitable adjustment in the contract price. The defendant argues that none of the conditions justify an equitable adjustment for differing site conditions. After careful consideration, and after hearing oral argument, this court grants the defendant's motion for summary judgment.

## FACTS

On September 30, 1986, the plaintiff, Jack Walser d/b/a Jack Walser Construction Company ("Walser"), entered into a contract with the Soil Conservation Service ("SCS") of the United States Department of Agriculture to remove debris on a section of the Cheat River in West Virginia. The contract price was $120,432, and the contract was to be completed within 64 days after the notice to proceed. Walser began work on the contract site on October 15, 1986, and completed the work in 65 days. The work was timely after a one-day

extension. The results were accepted by the SCS on December 18, 1986.

Walser filed a claim with the contracting officer on January 5, 1987, seeking an equitable adjustment to the contract price. The claim was denied by the contracting officer on January 15, 1987. Walser then filed suit in the United States Claims Court, but that suit was dismissed without prejudice for failure to submit a properly certified claim to the contracting officer. On September 5, 1989, Walser resubmitted a certified claim to the contracting officer, which was denied on September 19, 1989.

In this court, Walser claims that it is entitled to an equitable adjustment of the contract price under paragraph H–4 of the contract due to differing site conditions. Walser asserts five differing site conditions as grounds for its equitable adjustment claim: (1) the water level of the river fell between the day the site was shown for purposes of bidding and the first day of work on the site, leaving considerably more debris to be cleared than was visible at the job showing; (2) a state ban on the practice of using tires to keep the debris pile burning was enforced, making it more difficult to eliminate some of the waste; (3) excessive rainfall in November and December 1986, washing additional debris into the construction area which Walser removed; (4) beavers cut down trees, leaving additional debris which Walser cleaned up; and (5) unauthorized people entered the job site and cut down trees for firewood, leaving additional debris which Walser cleared.

As a result of these conditions, Walser claims that the contract was completed in 65 days, rather than the projected time of 20 days. Walser seeks an equitable adjustment of $124,853.13, plus interest, which it contends represents the amount of extra work that was required due to the differing site conditions.

## DISCUSSION

The contract provides that there are two types of differing site conditions which could lead to equitable adjustments:

> (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the contractor provided for in the contract.

Contract ¶ H–4 (FAR 52.236–2) *Differing Site Conditions.* In a Type I case, the issue concerns whether the site condition differs from a representation made about the site in the contract itself. *See, e.g., Servidone Construction Corp. v. United States,* 19 Cl.Ct. 346, 360 (1990), *aff'd,* 931 F.2d 860 (Fed.Cir.1991); *Dawco Construction, Inc. v. United States,* 18 Cl.Ct. 682, 687 (1989), *aff'd in part and rev'd in part on other grounds,* 930 F.2d 872 (Fed.Cir. 1991). In our case, the contract contained no representations concerning the conditions at issue.[1] Therefore, our case is a Type II case.

Walser must prove that the physical conditions on the site were unknown and unusual. *See Charles T. Parker Construction Co. v. United States,* 193 Ct.Cl. 320, 333, 433 F.2d 771, 778 (1970). In a differing site condition case, "a Government construction contractor seeking to establish a 'category two' changed condition is confronted with a relatively heavy burden of proof." *Id.* In proving its case, Walser must show that it did not know about the physical condition, that it could not have *anticipated* the condition from inspection *or* general experience, and that the condition varied from the norm in similar contracting work. *Lathan Company, Inc. v. United States,* 20 Cl.Ct. 122, 128 (1990) (citing cases). This court will analyze the five alleged differing site condi-

---

1. Walser argues that a Type I analysis may be used when the only representation to the contractor took place on a visit to the site. However, case law makes clear that "[a] contractor will not be awarded an equitable adjustment for a differing site conditions claim unless the contract indicated specifically what the conditions were that one might expect." *Dawco Construction,* 18 Cl.Ct. at 688; *see P.J. Maffei Building Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984).

tions to determine whether an equitable adjustment to the contract is warranted.

*Water Level*

■ Walser argues that the water level of the river fell between the day the site was shown for purposes of bidding and the first day of work on the site, leaving considerably more debris to be cleared than was visible at the job showing. Walser contends that this situation represents a different site condition warranting an equitable adjustment. Walser also asserts that the level of the Cheat River at the time of the job showing in comparison to the water level at the time when contract work began is a genuine issue of material fact in dispute precluding summary judgment. In this connection, Walser contends that it is not reasonable to expect that Walser should have anticipated a reduction in the water level and should have anticipated the nature and extent of the additional debris to be removed.

The contract mandates that it is the responsibility of the contractor to take actions to ascertain "the uncertainties of weather, river stages, tides, or similar physical conditions at the site," and also that the "failure of the Contractor to take the[se] actions ... will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government." Contract ¶ H–1 (FAR 52.236–3) *Site Investigation and Conditions Affecting the Work.* To prove its case, Walser must show that it encountered a situation materially different from the "known" or the "usual." *See Charles T. Parker,* 193 Ct.Cl. at 333, 433 F.2d at 778. Even assuming that the water level changed from the time of the job showing to the initiation of work, the government presents unrefuted evidence [2] that the river flow conditions during October through December 1986 were within a "normal" range and that there

were no occurrences of high or low water levels. Under the contract, Walser had a duty to take into consideration the uncertainties of river stages and other physical conditions in formulating its bid. This duty encompassed taking into account normal changes in the water level and river flow. Given this duty, in estimating the contract price Walser should have anticipated usual reductions in the water level and the resulting additional debris to be removed. As a matter of law, this court rejects Walser's water level argument as a ground for an equitable adjustment to the contract price.

*Tire Burning*

■ Walser asserts that whether Walser encountered differing site conditions because it was prohibited from burning tires is a genuine issue of material fact. Walser claims that other contractors performing similar work were permitted to burn tires to assist in the disposal of debris. Walser argues that it is not reasonable to expect that Walser should have known or anticipated that it would be prevented from burning tires for the purpose of keeping debris burning.

The court rejects Walser's tire burning argument. An equitable adjustment cannot be supported by this argument because the ban on burning tires was not a changed *physical* condition as required by the differing site conditions clause. *See, e.g., Erickson–Shaver Contracting Corp. v. United States,* 9 Cl.Ct. 302, 304 (1985) ("[A]n equitable adjustment will be granted where the contractor encounters unusual *physical* conditions differing materially from those ordinarily encountered and generally recognized as inhering in the work of the character provided for in the contract." (emphasis added)). Furthermore, the contract states:

The Contractor shall, without additional expense to the Government, be responsible for obtaining necessary licenses and permits, and for *complying with any Federal, State, and municipal laws,*

---

**2.** This evidence is in the form of an affidavit, attached to the government's memorandum in support of its motion for summary judgment, by John S. Weller, Area Engineer for the Phillipi Area Officer of the Soil Conservation Service in West Virginia. Walser presents no evidence to refute the affidavit.

*codes, and regulations applicable to the performance of the work.*

Contract ¶ 13 (FAR 52.236–7) *Permits and Responsibilities* (emphasis added). The contract also states that "[c]onstruction operations shall be carried out in such a manner that erosion and air and water pollution are minimized. State and local laws concerning pollution shall be complied with." Contract ¶ 401(4) *Erosion and Pollution Control.* The burning of tires was prohibited by West Virginia state law. As a matter of law, an equitable adjustment is not available to Walser on the ground that it was prohibited from burning tires to assist with the disposal of debris because compliance with state environmental laws was Walser's responsibility under the contract.

*Rainfall*

■ Walser argues that whether excessive rainfall during the months of November and December 1986 caused the Cheat River to rise approximately nine feet, causing additional debris to be deposited on the job site, is a genuine issue of material fact in dispute. This argument is similar to the water level argument, except that Walser now argues that the rising of the river in November and December 1986, rather than the receding of the river earlier in time, left additional debris which Walser removed.

Even assuming that the river rose during November and December due to rainfall, the government submits an affidavit stating that the river flow conditions during October through December of 1986 were within a "normal" range and that there were no occurrences of unusually high or low water levels. Walser presents no evidence to refute the government's affidavit. Under the contract, Walser had a duty to take into consideration the uncertainties of weather, river stages and similar physical conditions in formulating its bid. Contract ¶ H–1(a) (FAR 52.236–3) *Site Investigation and Conditions Affecting the Work.* This duty encompassed taking into account normal changes in the weather, water level and river flow. Furthermore, case law indicates that the differing site conditions clause generally does not cover weather conditions, which are deemed to be acts of God, when neither party assumed the risk for acts of God. *See Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 95–96 (1989); *Turnkey Enterprises, Inc. v. United States,* 220 Ct.Cl. 179, 187–88, 597 F.2d 750, 754–55 (1979); *Arundel Corp. v. United States,* 103 Ct.Cl. 688, 711–12, *cert. denied,* 326 U.S. 752, 66 S.Ct. 90, 90 L.Ed. 451 (1945). Regarding the height of the river, as the Court of Claims pointed out, "[t]he flow of the river and rainfall are so intertwined as to make it impossible to separate the river conditions from the weather" and that weather "is not a risk which is shifted to defendant via the changed conditions clause." *Turnkey Enterprises,* 220 Ct.Cl. at 187, 597 F.2d at 754. Walser should have anticipated usual changes in the water level and the resulting additional debris to be removed in estimating the contract price. As a matter of law, the court rejects Walser's rainfall argument as a ground for an equitable adjustment to the contract price.

*Beavers*

■ Walser asserts that whether beavers cut down trees, leaving additional debris to be cleared from the site after the contractor began work, is a genuine issue of material fact in dispute. Assuming that beavers cut down trees and left additional debris which Walser cleared, the question is whether Walser could not have anticipated this condition from inspection or general experience, and whether the condition varied from the norm in similar contracting work. *See Lathan Company,* 20 Cl.Ct. at 128. Walser's counsel at oral argument admitted that beavers are indigenous to areas bounding rivers in West Virginia. It is generally known that beavers cut down trees and build dams in rivers and streams within areas populated by beavers. Therefore, the condition encountered by Walser was not unusual, should have been anticipated, and should have been considered as part of Walser's duty to ascertain factors "generally recognized as inhering in work of the character provided for in the contract." *See Central Florida Construction Co.,* IBCA No. 246, 61–1 BCA ¶ 2,903, at

15,163 (1961) (denying an equitable adjustment in a case where mosquito infestation prevented work by a second shift because mosquitos are indigenous to the Florida Everglades where the contract was performed, and therefore mosquito infestation was neither unusual nor unanticipated); *see also Arizona Fence Company, Inc.,* IBCA No. 1144-3-77, 78-1 BCA 13,004 (1978) (denying equitable adjustment for site conditions that included damage to contractor supplies by wild animals).[3]

*People*

■ Walser maintains that whether unauthorized people entered the job site and cut down trees, leaving additional debris, is a genuine issue of material fact in dispute. Assuming that unauthorized people entered the job site and cut down trees, leaving additional debris that Walser cleared, the question again is whether Walser could not have anticipated this condition from inspection or general experience, and whether the condition varied from the norm in similar contracting work. *See Lathan Company,* 20 Cl.Ct. at 128. A contractor should know that at a job site of this type people will enter the property and cut down trees for firewood and leave debris. This finding was especially true at this job site which adjoins a roadway. Under the contract, Walser was required to take into account the "nature and location of the work" as well as investigate and "satisf[y] itself as to the general and local conditions which can affect the work or its costs." Contract ¶ H-1(a) (FAR 52.236-3) *Site Investigation and Conditions Affecting the Work.* The condition encountered by Walser was not unusual, should have been anticipated, and should have been considered as part of Walser's duty to ascertain factors "generally recognized as inhering in work of the character provided for in the contract."

## CONCLUSION

Based on the foregoing, this court concludes that none of the conditions encountered by the plaintiff in performing the contract justify an equitable adjustment to the contract price. Accordingly, this court grants the defendant's motion for summary judgment. The Clerk is directed to dismiss the plaintiff's complaint. Each party will bear its own costs.

---

**3.** The conclusion that Walser is not entitled to an equitable adjustment is supported by the government's proposed finding of fact that Walser was informed that it would not be responsible for clearing any beaver-damage debris. Walser asserts in its statement of genuine issues that this fact is controverted. However, Walser points to no facts, affidavits, or other evidence refuting the government's allegation. Therefore, this court adopts the government's proposed finding of fact that Walser was not obligated to clean up beaver-related damage and holds that Walser is not entitled to an equitable adjustment for work that Walser was not required to perform.