960 F.2d 155
 37 Cont.Cas.Fed. (CCH) P 76,294
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ASHBACH CONSTRUCTION CO., Appellant,
v.
Anthony A. FRANK, Postmaster General, Appellee.
 No. 91-1320.
 United States Court of Appeals, Federal Circuit.
 March 10, 1992.
 
 Before NIES, Chief Judge, and RICH and RADER, Circuit Judges.
 NIES, Chief Judge.
 
 
 1
 Ashbach Construction Co. appeals the denial of its claim for an equitable adjustment of the contract price for renovation of a parking deck located at the Main Post Office in Saint Paul, Minnesota. The Postal Service Board of Contract Appeals held that Ashbach failed to prove that Ashbach had encountered a site condition which differed materially from that indicated in the contract. We affirm.
 
 ANALYSIS
 
 2
 A Type I Differing Site Condition claim exists when conditions encountered during performance materially differ from those indicated in the contract. As held in P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916 (Fed.Cir.1984) (quoting Pacific Alaska Contractors v. United States, 436 F.2d 461, 469 (Ct.Cl.1971)): "[T]here must be reasonably plain or positive indicators in the bid information or contract documents that such subsurface conditions would be otherwise than actually found in contract performance...."
 
 
 3
 Ashbach argues that, although required to remove waterproofing membrane, the amount of such material was greater than indicated in the contract because boring logs supplied to bidders showed membrane in only one out of six borings. Ashbach offers no evidence or explanation why, apart from the fact of these boring logs, a contractor would expect the membrane to cover only part of the existing concrete deck. There is no evidence, for example, that a 1:5 ratio would generally be expected in this type of situation. Thus, the boring logs indicate membrane was present.
 
 
 4
 What clearly defeats Ashbach's claims is that it failed to review certain drawings prepared for an earlier renovation of the same facility which showed waterproofing membrane throughout the entire area. The Board found that these drawings, which were available for a bidder's inspection at the agency engineer's office, were indications of the site conditions; that the specification directed bidders to make an assessment of the drawings; and that Ashbach could have examined them without significant burden. Had Ashbach done so, it would have seen indications that the materials existed throughout the concrete slab.
 
 
 5
 Ashbach contends it did not have to look at the drawings because they were not "contract documents" attached to the solicitation and the government did not vouch for their reliability. The drawings, nevertheless, are "indications" of what site condition might reasonably be expected. "Indications" generally include information both in the solicitation itself and in documents to which bidders are directed by the solicitation, as here. Hunt & Willett v. United States, 351 F.2d 980 (Ct.Cl.1964); Flippin Materials Co. v. United States, 312 F.2d 408 (Ct.Cl.1963); Union Roofing and Sheet Metal Co., PSBCA No. 2366, 90-1 BCA p 22,505 (roof-subsurface mesh indicated by drawing available for review at contracting agency), aff'd mem. 909 F.2d 1496 (Fed.Cir.1990).
 
 
 6
 Ashbach's reliance on P.J. Maffei Building Wrecking v. United States, 732 F.2d 913 (Fed.Cir.1984) is misplaced. There, a contractor sought an equitable adjustment for the shortfall of salvageable steel in its demolition contract. To show entitlement, it relied on drawings which were not in the possession of the agency. The availability and reliability of those drawings had been expressly disclaimed by the agency. To the extent that the contractor Maffei relied solely on the drawings, it was found to have assumed a risk of shortfall. Here, Ashbach did not even look at the drawings made available by the agency. The holding in Maffei is not on point; nor can it be interpreted to mean that referenced drawings are never indications of site conditions.
 
 
 7
 In sum, the referenced drawings were "indications" that the membrane would be more extensive than Ashbach's extrapolation of a 1:5 ratio from the borings.