53 F.3d 345
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 The PEOPLES NATIONAL BANK, KINGFISHER, OKLAHOMA, successor
by merger of FIRST NATIONAL BANK OF GEARY,
Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-5104.
 United States Court of Appeals, Federal Circuit.
 Feb. 14, 1995.
 
 Before ARCHER, Chief Judge, RICH, and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 The Peoples National Bank, Kingfisher, Oklahoma, successor by merger to the First National Bank, Geary, Oklahoma (Bank), appeals from the judgment of the United States Court of Federal Claims granting summary judgment for the United States. Peoples Nat'l Bank v. United States, 30 Fed.Cl. 391 (1994). Because the Court of Federal Claims erred as a matter of law, we reverse and remand.
 
 
 2
 * Orval Cowan and Barbara Cowan borrowed money from the Bank. The Farmers Home Administration (FmHA) guaranteed two of the Cowan loans, each memorialized by a secured note. The Bank and FmHA entered into a contract regarding the loans. The contract, inter alia, contemplated possible default on the loans. In the event of a default, one of the contract options available to the Bank and FmHA is liquidation of the loan. Under the contract, FmHA retained the right to liquidate defaulted loans itself, employing the usual commercial methods of liquidation. In the event FmHA elected not to liquidate a defaulted loan, the contract assigned the chores of liquidation to the Bank.
 
 
 3
 In due course, the Cowans defaulted on the two FmHA guaranteed loans. The Bank duly notified FmHA of this fact and predicted the likely need to foreclose on the loans. The Bank also informed FmHA that the Cowans were denying any liability on the guaranteed notes. The Bank warned FmHA that the Federal Deposit Insurance Corporation (FDIC) was claiming competing interests in some of the collateral securing the guaranteed loans. The stage was thus set for a complicated foreclosure proceeding in Oklahoma, where the law requires a foreclosing bank to prove the validity of the loan and security interest in the collateral subject to foreclosure. While the Bank was conferring with FmHA and the Cowans about remedies for the defaults, the Cowans brought suit in state court seeking to invalidate the notes. The Bank promptly counterclaimed seeking judgment on the notes and foreclosure on the collateral. At the conclusion of a long litigation, including forays to other courts to resolve the FDIC issues, the pursuit of the Cowans through their bankruptcy proceedings, and two appeals taken by the Cowans to the highest state court, the Bank established the validity of its notes and the security interests, and reduced the collateral to cash to satisfy the Cowans' guaranteed obligations. Because the Bank's contract with FmHA provided for reimbursement of "reasonable liquidation costs," the Bank sought payment by FmHA of its foreclosure litigation costs. The Bank's final claim sought $307,703.78 for attorney's fees and expenses.
 
 
 4
 The FmHA State Director denied the Bank's claim, asserting that the majority of the sum claimed related to litigation over the validity of the notes and the security interests. The State Director contended that reasonable and customary legal fees in a foreclosure would have been 10% of the unpaid loan balance, or in this case $37,440.00. The Bank appealed the State Director's decision to the National Appeals Staff, which following a hearing modified the State Director's decision to award 15% of the outstanding principal balances on the two guaranteed loans as reasonable liquidation costs, but otherwise denied the balance of the Bank's claim. The Bank appealed the hearing officer's decision to the National Director of the National Appeals Staff, who denied the Bank's claim and reinstated the State Director's decision. The Bank brought suit in the Court of Federal Claims, contending that its contract with FmHA providing for reasonable liquidation costs requires reimbursement of the costs of establishing the validity of its loans and their security.
 
 II
 
 5
 The question before the Court of Federal Claims was whether the agency's denial of the costs of establishing validity of the loan and security was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 706(2)(A) (1988). The Court of Federal Claims interpreted the word "liquidation" in the Bank's contract to mean the termination of a loan contract and the reduction of its collateral to cash. As such, the term "assumes the existence of a valid and enforceable loan arrangement," according to the Court of Federal Claims. Fees and costs to establish validity and enforceability therefore cannot be any part of liquidation cost, let alone reasonable liquidation costs. Pointing to evidence in the record that " '[t]he normal and customary attorney fees on straight foreclosure action run from 10-15% of the amount sued for,' " the Court of Federal Claims held that the agency action was supported by substantial evidence and not otherwise unlawful. The Bank's motion for summary judgment was denied, and the Government's motion for summary judgment was granted.
 
 III
 
 6
 We review decisions of the Court of Federal Claims to determine if they are premised on clearly erroneous factual foundations or otherwise incorrect as a matter of law. Transamerica Ins. Corp. v. United States, 973 F.2d 1572, 1576 (Fed.Cir.1992). We review the grant of a motion for summary judgment de novo. Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992). The construction of the Bank's contract with FmHA is a question of law, and we review de novo lower court determinations on that issue. See Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed.Cir.1991); P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916-17 (Fed.Cir.1984).
 
 IV
 
 7
 The precise question before us is whether the Court of Federal Claims erred as a matter of law in determining on the record of this case that FmHA's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A).
 
 
 8
 The linchpin of the decision below was the court's view that in this case reasonable costs of "liquidation" could not include the costs incurred to establish the validity of the loans and the related security interests. On that point, the court erred. Under Oklahoma law, "[t]o foreclose, a claim must be adjudicated, and the validity and priority of a lien must be established." Peat, Marwick, Mitchell & Co. v. Bates, 839 P.2d 208, 210 (Okla.Ct.App.1992); see also Stephenson v. Clement, 43 P.2d 430, 433 (Okla.1935). Thus in Oklahoma, an essential element of a foreclosure action is proving the validity of the loan and the validity and priority of the security interest that is being foreclosed upon.
 
 
 9
 When FmHA dispatched the Bank to foreclose on the two guaranteed loans, it was on notice that the Cowans would contest the validity of the loans. Furthermore, had FmHA itself shouldered the foreclosure burdens, its attorneys would have met the same challenges to the validity of the underlying loans. Neither in its brief nor at oral argument did the Government challenge the proposition that in Oklahoma, at least, proof of the validity of a loan and the associated collateral is part of the normal process of liquidation through judicial foreclosure action. In defending the Cowans' challenges to the validity of the notes, the Bank did no more than was required of it had it won the race to the courthouse, and no more than would have been required of FmHA if it had pursued foreclosure on its own in the Oklahoma courts. Consequently, we must conclude that in the circumstances of this case, "reasonable liquidation costs" in the Bank's contract must include, not exclude, reasonable fees and costs incurred in establishing the validity of the notes and the associated collateral.
 
 
 10
 The Government notes that the Bank seeks attorney fees and expenses that are quite high in comparison to the $400,000.00 face amount of the guaranteed loans. That, however, is no reason to deny the Bank its entitlement. This is especially so, given the uncontested testimony by the Bank's expert that farmers such as the Cowans regularly contest the validity of the underlying loans in order to avoid payment. Furthermore, the Cowans' claim and competing federal agency claims were the cause of much of the lengthy and expensive litigation that finally resulted in liquidation of the collateral. Finally, the fees and expenses incurred by the Bank--while large in dollar numbers--were expressly found by an Oklahoma district court judge presiding in a rural community to be reasonable amounts necessary to collect on the notes.
 
 
 11
 On the state of the record before this court, we cannot determine if the sums claimed by the Bank include fees and costs other than those incurred in establishing the validity of the notes and the associated collateral. In particular, but without limitation, we note that certain fees and costs were incurred in connection with the Cowans' bankruptcy reorganization proceedings. Since certain of such other costs may be excluded from reimbursement by contract, law or regulation, we cannot simply order that the Bank's summary judgment motion be granted. Instead, we must reverse the judgment below, for the reasons set forth above, and remand for calculation of the additional sums due to the Bank, as reasonable liquidation costs.
 
 
 12
 No costs.