ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --                                )
                                            )
Aegis Defence Services Ltd.                 )     ASBCA No. 59082
                                            )
Under Contract No. W52P1J-11-D-0082         )

APPEARANCE FOR THE APPELLANT:         Armani Vadiee, Esq.
                                        Smith Pachter McWhorter PLC
                                        Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT:       Raymond M. Saunders, Esq.
                                        Army Chief Trial Attorney
                                        MAJ Cameron R. Edlefsen, JA
                                        MAJ Samuel E. Gregory, JA
                                        Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE WILSON
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This appeal arises from a dispute as to the interpretation of certain "right of first refusal" language under a contract between the United States Army (Army or the government) and Aegis Defence Services Ltd., (Aegis or appellant) for various security support services. The government moves for summary judgment on this issue of contract interpretation. Appellant opposes the government's motion. We find the parties' differing interpretations of the contract language at issue present a dispute of fact that is material to the resolution of the appeal. Accordingly, we deny the government's motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 1 June 2011, the government and appellant entered into Contract No. W52P1J-11-D-0082 (contract), a multiple-award indefinite delivery/indefinite quantity contract for commercial security support services in Iraq (R4, tab 1 at 1, 4). The contract incorporated by reference appellant's 8 April 2011 proposal (*id*. at 4).

2. The contract incorporated by reference the commercial items clause at FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUNE 2010) (R4, tab 1 at 35).

3.  The contract's Performance Work Statement (PWS), dated 24 January 2011, provided, in pertinent part:

**11.0 GENERAL GOVERNMENT FURNISHED PROPERTY, EQUIPMENT AND SERVICES**

The government may provide the facilities, equipment, materials, and/or services listed below and will be specified in each respective Task Order.  For those life support services required, not provided by the Government, the Government will provide coordination instruction and direction in the individual Task Order.

....

**11.3 RECORDS**

The contractor will maintain records of all government property IAW FAR Part 45.5 and Far Part [sic] 52.245-1.

**11.4  LOSS, THEFT, DAMAGE[], DESTRUCTION**

...The contactor shall be responsible for the operation and maintenance of all property used by the contractor.  If a *Government provided vehicle* is damaged or destroyed by an IED, RPG or small arms fire, this would be considered proper consumption.  However, if damage is done to a *government provided vehicle* because the contractor neglected to properly maintain the vehicle, the Contractor shall be responsible to repair or replace the vehicle at NO ADDITIONAL COST to the Government.

....

**12.1  GENERAL**

Except for those items specifically stated to be government furnished in Parts 11 and 13, or otherwise specified per individual Task Order, the contractor shall furnish everything required to perform this PWS.  The equipment required to perform the services will remain Contractor

2

Furnished Equipment (CFE); the US Government will not
take possession as GFE upon purchase.

(R4, tab 1 at 64, 66-67) (Italics added)

4. The contract did not expressly incorporate by reference FAR 52.245-1,
GOVERNMENT PROPERTY (AUG 2010). However, under "Section H – Clause
Addendum" of the "Commercial Clause Addendum," the contract set forth in full text
local clause 52.245-4506, "GOVERNMENT FURNISHED PROPERTY." The
relevant portions of the local Government Furnished Property clause provided:

> Schedule of Government Furnished Property
>
> (a) The Government shall furnish F.O.B. contractor's place
> of performance, the Government-owned property listed in
> Appendix B of the PWS as Attachment 0001 of this
> document for use in the performance of this contract.
>
> (b) The property shall be delivered in accordance with the
> schedule set forth in Attachment Number 0001 of this
> document.
>
> ....
>
> (d) The quantity of Government Furnished Material (GFM)
> and Government Furnished Equipment (GFE) which is
> offered within the PWS is contingent upon award of the
> total quantity solicited herein.

(R4, tab 1 at 128) "Appendix B of the PWS" is not in the record.

5. On 13 September 2011, the government issued Task Order No. 0002 (task
order) to appellant with an effective date of 2 September 2011 (R4, tab 3 at 1). The
base period of performance for the task order began 3 September 2011 and ended
31 December 2011, with four one-year options beginning on 1 January 2012 and
ending on 31 December each year. The task order included the following pertinent
provisions:

> 7. All clauses, terms and conditions set forth in the Basic
> SSS-I contract, W52P1J-11-D-0082, apply.
>
> ....

3

9. All equipment, labor, materials and supplies for this
Task Order is contractor furnished, unless stated as
[government furnished equipment (GFE)] in the PWS.

(R4, tab 3 at 206)

6. The task order included its own PWS, dated 24 August 2011 (R4, tab 3 at 233). The task order's PWS included the following pertinent provisions:

**11.0 General Government Furnished Property, Equipment and Services** – All terms and conditions of this paragraph from the basic award PWS remain[] in full force and effect for this Task Order. The Government will provide 155 [light armored vehicles (LAVs)] for use to perform the required services under this task order.

....

**12.0 General Contractor Furnished Items and Services** – All terms and conditions of this paragraph from the basic award PWS remain[] in full force and effect for this Task Order. Beyond the 155 LAVs provided by the Government as stated in paragraph[s] 11.0 and 11.1, all other equipment and services are Contractor furnished.

(R4, tab 1 at 235)

7. Paragraph 2.5, "General Notes and Assumptions," of appellant's 30 August 2011 pricing proposal, incorporated by reference into the task order, stated that "[a]ll LAVs…will be provided as GFE (incl. maintenance and equipment) unless such CLINs are amended to be CFE" (R4, tab 3 at 252).

8. The government subsequently determined that not all of the LAVs that it was providing to appellant for use on the task order were B6-armored vehicles, as was required (R4, tabs 6, 7).

9. Appellant submitted a proposal on 11 November 2011 (R4, tab 9 at 326, 329, tab 13 at 391). Appellant revised its 11 November proposal on 5 December 2011 for 40 B6-armored LAVs (R4, tab 9 at 326, 328-29). The 5 December proposal contained the following provisions under Section 2, "PRICE":

Price assumes vehicles are delivered to Iraq, registered to Aegis and ready for use.

4

....

> For the avoidance of doubt[,] any costs associated with transferring ownership to the Government will be for the Government's account.

(R4, tab 9 at 329-30)

10. Section 3, "TERMS," of appellant's 5 December proposal provided:

- The Government will provide all vehicle maintenance, repairs, replacements and fuel.

- Although the vehicles would be the property of the Government (as CAP [contractor acquired property]) Aegis would hold the vehicles to the Government's order, but in Aegis['] name for the duration of the contract to ensure the vehicles can be registered and licensed in Iraq.

- Government will be responsible for licensing renewal fees and fees or taxes imposed on vehicles by the Government of Iraq (as an ODC under the Contract).

- At the end of the Contract[,] Aegis will be given the right of first refusal to purchase the vehicles *in the event the Government has no further use for them....*

- The terms of the Contract apply to the vehicles as if they were GFE.

(R4, tab 9 at 330) (Emphasis added)

11. Appellant submitted a second revised proposal, dated 11 December 2011, for 54 B6-armored LAVs (R4, tab 11 at 359-60). Besides the change to the number of vehicles proposed, the terms and conditions were otherwise substantially unmodified from the 5 December proposal (*id.* at 360-61).

12. By email dated 19 December 2011, the government provided appellant with a draft of the revised task order PWS for appellant's review (R4, tab 12 at 370). Appellant responded by email on 20 December 2011 with comments on the revised task order PWS, including the following:

> 2. [P]ara 11.0.
>
> (i) Ownership: we think it is best if Aegis purchases the vehicle[s] in its own name, with an express undertaking in the PWS to transfer [them] to the USG at the end of [the] contract[; they] can still be dealt with as USG property[,] but they would be owned in Aegis' name[. T]his means Aegis would be able to register the vehicles and not wait until GoI has a system in place to allow USG registration. We would also like to reflect the purchase by Aegis option in the event the USG does not want the vehicles as detailed in our proposal for vehicle purchase.

(R4, tab 12 at 369)

13. On 23 December 2011, the parties executed Task Order Modification No. 06, which "fund[ed] CLIN 0001AH, LAVs, for the purchase of 14 uparmored suburbans." Task Order Modification No. 06 incorporated by reference appellant's 19 December proposal. (R4, tab 13 at 385, 387)

14. On 9 January 2012, the parties executed Task Order Modification No. 07, incorporating the revised task order PWS dated 3 January 2012 (gov't reply br., ex. 1 at 1, 3), which stated the following at paragraph 11.0, "**General Government Furnished Property, Equipment and Services**":

> The Government will provide up to 222 gas or diesel powered LAVs, in their current condition of varying degrees of armor, for contractor's use in performing the required services under this task order.... All GFE and CFE LAVs are to be tracked in the contractor property control system.
>
> ....
>
> The contractor may be required to purchase additional Level III/B6 armored LAVs as CFE, if funding is available. All LAVs purchased by the contractor for use on this contract will be registered and licensed in [the]

contractor's name to facilitate GoI licensing. [The government] will provide reimbursement for costs associated with licensing, registration, taxes, renewal fees and title transfer fees imposed by the Government of Iraq. At the end of the contractor's performance period on this Task Order, USG will retake title of the LAVs. If USG does not wish to take title to the vehicles, contractor will be given first right of refusal on negotiating and possible procurement of said vehicles.

(Gov't mot., ex. 5 at 1, 3; app. resp. at 2)

15. On 13 February 2012, the government executed Task Order Modification No. 10, funding the purchase of an additional 38 "up-armored SUVs" (R4, tab 23 at 615, 617).

16. By email dated 14 August 2013, the government directed appellant to turn the LAVs over to the government for possession at the end of the contract (gov't mot., ex. 13 at 1).

17. On 17 September 2013, appellant submitted a claim for the interpretation of contract terms to the contracting officer (R4, tab 56 at 983-88). In the email accompanying appellant's claim, appellant noted that the government did not intend "to retain" the vehicles, but intended instead to turn them over to the Government of Iraq, and asserted that "it is inconsistent and incorrect (and cannot possibly offer best value to the Government since we are prepared to pay for these vehicles) to state that [they] cannot be transferred to Aegis." Appellant also stated:

As you are aware[,] it is our opinion and that of our external US Government contracting attorney[s] that the correct legal interpretation remains the one that shows the 52 suburbans…always have belonged to Aegis and thus are not GFE anyway. All of which I would assert supports the argument that there is no bar to letting Aegis keep these vehicles – which in any event are legally registered to us in Iraq.

(R4, tab 56 at 981) In its claim, appellant requested the contracting officer to make several determinations, including, *inter alia*:

2. That under the explicit terms of the contract the U.S. Government does not now nor has it ever held title to the LAVs.

7

....

4. That under the explicit terms of the contract Aegis has a right of first refusal...at contract completion to retain the LAVs upon payment of the depreciated cost of the LAVs to the U.S. Government, and such right of first refusal preempts any potential authority of the U.S. Government to destroy or transfer the vehicles or any number of them to the GOI or to any third party.

5. That the U.S. Government does not have any intended use or further need for the LAVs within Iraq except as potentially described in 4 above.

(*Id.* at 984)

18. On 25 October 2013, the contracting officer issued a final decision denying appellant's 17 September claim (R4, tab 63 at 1039, 1041-43).

19. By letter dated 20 December 2013, appellant appealed to the Board from the contracting officer's final decision.

## DECISION

In moving for summary judgment, the government contends that there are no material facts in dispute; that the LAVs are contractor-acquired property because the contract language clearly states that the government would take title to the LAVs at the end of the contract's period of performance; that appellant would have a right of first refusal to procure the LAVs only if the government elected not to take title; and that the government did elect to take title, vitiating appellant's right of first refusal regardless of whatever subsequent use the government intended for the vehicles upon retaking title to them (gov't mot. at 1, 6, 8-9). Appellant counters that the parties' intentions as to the government's use for the vehicles subsequent to taking title to them under the clause – whether for the government's own purposes or for any purpose whatsoever, including transferring them to a third party – creates a dispute of material fact, and that the government's interpretation would render meaningless any language regarding appellant's right of first refusal (app. resp. at 1-2, 5).

It is well settled that summary judgment is only appropriate where the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). As a general rule, pure contract interpretation is a question

of law that may generally be resolved by summary judgment. *Osborne Construction Company*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,514 (citing *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir. 1984)); *HTA Aviation, LLC*, ASBCA No. 57891 *et al.*, 14-1 BCA ¶ 35,556 at 174,238. But where the parties "vigorously contest the intended *meaning* of material contract terms," we have recognized that "material disputes of fact nevertheless may arise concerning the meaning intended by the parties." *International Source and Supply, Inc.*, ASBCA Nos. 52318, 52446, 00-1 BCA ¶ 30,875 at 152,434-35 (emphasis added). "When the meaning of a contract and the parties' intentions are both relevant and in dispute, there are mixed questions of fact and law that pose triable issues precluding summary judgment." *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2 BCA ¶ 34,300 at 169,434.

The government contends that the LAVs are "contractor acquired property," a term that is nowhere defined in the contract or the task order (SOF ¶¶ 3-7, 9, 10, 12, 14). Although the terms "*Government property*," "*Government-furnished property*," and "*Contractor-acquired property*" are defined at paragraph (a) of FAR 52.245-1, GOVERNMENT PROPERTY (AUG 2010), neither the contract nor the task order expressly incorporates the clause (SOF ¶ 4).[1] Even if we could somehow determine from the record before us that the LAVs were "contractor-acquired property," it is not clear whether the government ever actually took title to the LAVs. The government urges us to look to FAR 45.402 for "general guidance to title with respect to contractor-acquired property" (gov't mot. at 7) (footnote omitted), which states in pertinent part:

> (a) Title vests in the Government for all property acquired or fabricated by the contractor in accordance with the financing provisions or other specific requirements for passage of title in the contract.

FAR 45.402(a). In this case, the "specific requirements for passage of title in the contract" to which the "general guidance" of FAR 45.402 refers is the right of first refusal language.

The parties vigorously contest the intended meaning of the right of first refusal language. Whether the parties intended for the government to afford appellant a right of first refusal only if the government refused to take title to the vehicles, or whether they intended for the government to afford appellant a right of first refusal in the event

---

[1] Whether FAR 52.245-1 should be incorporated into the contract (see *G.L. Christian and Associates v. United States*, 312 F.2d 418 (Ct. Cl. 1963), *cert. denied*, 375 U.S. 954 (1963) has not been raised nor briefed, and this is not before us. Neither party argues that the definitions of the clause should be used in deciding this appeal regardless of whether the clause is incorporated into the contract and/or task order.

the government did not intend to use the vehicles for its own purposes, are mixed questions of fact and law. In order to answer such questions, we must ascertain the intent of the parties, and in order to do that we must consider extrinsic evidence, which precludes summary judgment. *See, e.g.*, *Ronald Hsu Construction Co.*, ASBCA Nos. 48682, 49441, 97-1 BCA ¶ 28,739 at 143,453-54 ("[W]here the contract terms are ambiguous, requiring the weighing of external evidence, the matter is not amenable to summary judgment."); *Fairchild Industries, Inc.*, ASBCA No. 46197, 98-2 BCA ¶ 29,767 at 147,508 (when the issue of intent is controverted, it cannot be the subject of a successful dispositive motion); *International Source and Supply*, 00-1 BCA ¶ 30,875 at 152,434 ("[W]e do not interpret contractual terms in a vacuum; rather, our goal is to arrive at an interpretation that accurately reflects the intentions of the parties."). Accordingly, summary judgment is inappropriate in this case.

## CONCLUSION

Because we find that there is a genuine dispute of material fact as to the parties' intended meaning of the contract language at issue, the government's motion for summary judgment is denied.

Dated: 14 November 2014

OWEN C. WILSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59082, Appeal of Aegis Defence Services Ltd., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals