ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| ECC International LLC | ) | ASBCA No. 58856 |
| | ) | |
| Under Contract No. W912DQ-11-C-4009 | ) | |

APPEARANCE FOR THE APPELLANT:        R. Dale Holmes, Esq.
                                     Amy M. Kirby, Esq.
                                       Cohen Seglias Pallas Greenhall &
                                       Furman PC
                                     Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:      Thomas H. Gourlay, Jr., Esq.
                                       Engineer Chief Trial Attorney
                                     Daniel B. McConnell, Esq.
                                     Geoffrey A. Mueller, Esq.
                                     Regina L. Schowalter, Esq.
                                       Engineer Trial Attorneys
                                     U.S. Army Engineer District,
                                       Middle East
                                     Winchester, VA

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal arises from a dispute between the parties over whether the contract required appellant to construct a vehicle refueling point (VRP) as part of the construction of a Military Police School at Camp Shaheen, Afghanistan. The government has moved for summary judgment on this issue. Appellant opposes the government's motion and has cross-moved for summary judgment. For the reasons stated below, we deny both parties' motions.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 24 February 2011, the U.S. Army Corps of Engineers issued Solicitation No. W912DQ-11-R-4014 for the design and construction of the Afghan National Army Military Police and Personal Security Training School (MP School) and the

Signal Training School (Signal School) at Camp Shaheen, Balkh Province, Afghanistan (Government's Statement of Undisputed Facts (gov't stmt.) ¶ 1.)[1]

2. The solicitation contemplated a firm-fixed-price contract with four contract line item numbers (CLINs): one for design and construction of the MP School, one for design and construction of the Signal School, and two for Defense Base Act insurance applicable to each project (gov't stmt. ¶ 2).

3. CLIN 0001, for the MP School, states:

> The contractor shall provide all Manpower, Materials, Equipment, and Coordination to the Design/Construction of Military Police and Personal Security Training School in accordance to the attached specifications. [See] PRICE PROPOSAL SCHEDULE Military School.[2]

CLIN 0001 provided a single line for insertion of a lump sum firm fixed price for the entire MP School project. (R4, tab 4 at 39)

4. The solicitation included a price proposal schedule for the MP School and a price proposal schedule for the Signal School. The price proposal schedule for the MP School was broken out by subCLINs (0001A1, 0001B2, etc.) that called out most, but not all, of the items of work contained in the specifications referenced in CLIN 0001. (Gov't stmt. ¶¶ 3, 7; R4, tab 4 at 41-42)

5. The price proposal schedules contained the following statement at the top of the first page: "This Price Proposal Schedule is information supplemental to the CLIN and is not part of the contract" (R4, tab 4 at 41). The price proposal schedules also contained the following "PROPOSAL SCHEDULE NOTES" on the second page, following the list of bid items:

---

[1] The government has filed a statement of undisputed facts in connection with its motion. Appellant has indicated where it agrees and where it does not agree with the government's statement. Along with its opposition, appellant has also filed a statement of undisputed facts, to which the government has not responded. References in this opinion to either document will be to those paragraphs that are not disputed.

[2] By reference to CLIN 0003 for the Signal School, the word "See" was probably intended to precede the words "PRICE PROPOSAL SCHEDULE" in CLIN 0001, but was inadvertently omitted.

> 1. Offeror shall submit prices on all items. Scope of work
> on each items [sic] are [sic] described in Section 01010
> and 01015 [the specifications].
>
> 2. Only the contract for the entire schedule will be
> awarded under this solicitation. This project will be
> awarded as a lump sum contract. This Proposal Schedule
> is an accounting tool for allocating funds to applicable
> budget.

(R4, tab 4 at 42)

6. The VRP was called out by the specifications and drawings to be constructed as part of the MP School. MP School specification section 01010, paragraph 4.12.3, Site Adapt Facilities, provided that "The contractor shall construct the Site Adapt Facilities listed below in conformance with the standard design drawings provided." The VRP was one of the site adapt facilities so listed, under Site Identifier Number 109. (Gov't stmt. ¶¶ 9-11)

7. MP School specification section 01010, paragraph 4.12.12, Vehicle Re-Fueling Point, stated:

> The Contractor shall construct a vehicle re-fueling point as
> shown in the fuel point standard drawings and as specified
> in Section 01015. It shall be located as shown in the plans.
> The Contractor shall provide a full supply of fuel to the
> tanks at the time of turnover to the Government. Vehicle
> Re-Fueling Point shall have a metal roof covering.

(Gov't stmt. ¶ 12)

8. Additional sections of the MP School specification provided requirements for the plumbing system and storage tanks related to the VRP; the contract also contained 18 drawings providing siting and construction information for the VRP (gov't stmt. ¶¶ 13-15).

9. Contract No. W912DQ-11-C-4009 (the contract) was awarded to ECC International LLC (ECCI) on 8 April 2011 in the total amount of $27,613,870.20. The price included $16,870,811.69 for the MP School and $10,583,106.11 for the Signal School. (Gov't stmt. ¶¶ 16, 17)

10. ECCI submitted its 65% design for the MP School, which included the VRP, on 30 July 2011. On 3 February 2012, ECCI submitted its 100% design, which also included the VRP. (Gov't stmt. ¶¶ 23-26) At some point, the ECCI program manager became aware that its design engineers were including the VRP in ECCI's submitted designs (app. mot., attach., affidavit of Scott Hayward (Hayward aff.) ¶ 16). He immediately directed that the Corps of Engineers be informed that ECCI did not consider the VRP to be part of the awarded contract work since it was not listed on the price proposal schedule for the MP School (*id.* ¶ 17).

11. The record is unclear on when the Corps was first informed of ECCI's position on the VRP. The first written notice in the record before the Board is a letter dated 10 September 2012 from ECCI to the Corps, stating:

> This letter is to notify USACE that neither the detailed price schedule nor ECCI's price proposal included a Vehicle Refueling Point (VRP) for MP/Signal School. The detailed schedule listed all required buildings, utilities and site civil work required for the project, but failed to include a line item for the VRP that is described within the statement of work and drawings accompanying the solicitation. However, since there was no line item for the VRP and there is no other line item the VRP could be associated with; ECCI did not include any costs for this facility in our proposal.

ECCI concluded by saying it would need a contract modification to construct the VRP. (R4, tab 29)

12. The Corps did not agree. By letter dated 27 September 2012, the contracting officer responded that the requirement for the VRP was clearly identified in multiple locations in the contract drawings and specifications, and the fact that it was not listed separately in the price proposal schedule was irrelevant (R4, tab 30). The contracting officer stated that "It is neither expected nor required of the Government to list each and every feature of work as a separate line item in the price schedule of the RFP.... It is solely up to the contractor to decide how to incorporate the costs of the contract requirements into the contractor's price proposal." Thus, the government would not be issuing a contract modification for the VRP, and would insist that ECCI construct it. ECCI was invited to submit a claim if it disagreed. (*Id.*)

13. On 16 May 2013, ECCI submitted a certified claim for $350,606.38 for the costs of constructing the VRP (R4, tab 3). In its cover letter, ECCI asserted that it prepared its proposal consistent with the instructions in the solicitation to propose a

4

price for all items included in the proposal schedule. Since the VRP was not an item included in the proposal schedule, ECCI did not propose a price for it. ECCI also pointed to the Order of Precedence clause in the contract as resolving any inconsistency between the proposal schedule and the specifications. (*Id.*)

14. On 27 June 2013, the contracting officer denied ECCI's claim (R4, tab 2).

15. ECCI filed its appeal to this Board on 4 September 2013 (R4, tab 1 at 5).

16. The contract specifications for the MP School, section 01010, paragraph 4.8, called for the contractor to design and construct an exterior site and building lighting system:

> Contractor shall design and construct all site and building lighting in compliance with the recommendations of IESNA.
>
> Exterior site lighting shall be provided for canopies, roadways, walkways, hardstands, training areas, exercise areas, and facilities. Search lights shall be provided for guard towers and similar facilities.

(R4, tab 11 at 376) This item is not listed in the proposal schedule for the MP School (gov't stmt. ¶ 49).

17. ECCI did not bid or construct a base-wide general lighting and/or street lighting system and the government did not require ECCI to build it (Hayward aff. ¶ 22).

18. The MP School specification, Section 01015, paragraph 2.3.7, required the contractor to install a loudspeaker and alarm system "that can alert the entire compound via panic button from any tower or guard post station" (R4, tab 11 at 399). This requirement was not listed on the price proposal schedule for the MP School (gov't stmt. ¶ 52).

19. ECCI did not bid or construct a loudspeaker and alarm system and the government did not require ECCI to build it (Hayward aff. ¶ 23).

20. The MP School specification section 01010, paragraph 4.3, and section 01015, paragraph 2.3.5.1, required the contractor to install three flagpoles outside the main entrance of the operations headquarters and offices building (R4, tab 11 at 373,

395). This requirement was not listed on the price proposal schedule for the MP School (gov't stmt. ¶ 42).

21. ECCI bid and constructed this requirement because it was an ancillary work element associated with the headquarters facility listed on the price proposal schedule for the MP School and included in ECCI's price for that facility (Hayward aff. ¶ 20).

22. The MP School specification section 01010, paragraph 4.6, required the contractor to perform demolition and grading and install a storm sewer system (R4, tab 11 at 374). While demolition and grading were listed on the MP School price proposal schedule, the storm sewer system was not (gov't stmt. ¶ 45; R4, tab 4 at 41).

23. ECCI bid and constructed a storm sewer system because it considered it to be clearly included in the grading and road network items listed on the price proposal schedule for the MP School. The grading drawings included storm drainage requirements and the road network drawings included the concrete ditches. ECCI included the pricing for the major earthwork for the storm sewer system in the grading line item and the pricing for the ditches and culverts in the road network line item. (Hayward aff. ¶ 21)

24. Mr. Hayward is a registered professional engineer who was a warranted government contracting officer and Certified Acquisition Professional, has 30 years of experience in construction and contracts management, and has managed the preparation of cost estimates for approximately 80 projects in Afghanistan for ECCI (Hayward aff. ¶¶ 1-2).

25. In Mr. Hayward's experience, most projects advertised by the Corps of Engineers in Afghanistan included standard drawings prepared by the Baker engineering firm. Often Baker drawings and specifications were included for facilities not required in the RFP price proposal schedule. In these cases, ECCI would not bid these facilities, and the Corps did not require their construction. ECCI relied on this past practice in bidding the contract at issue in this appeal. (Hayward aff. ¶ 15).

DECISION

Both parties contend that there are no material facts in dispute and that they are entitled to judgment as a matter of law. The government argues that it is entitled to summary judgment under the "Zisken" rule, citing *Zisken Construction Co.*, ASBCA No. 7875, 1963 BCA ¶ 4001. *Zisken* is one of a line of Board cases that stand for the proposition that a contractor is not entitled to additional compensation for work that is

6

clearly required by the contract specifications and drawings, even if not included in any specific pay item. 1963 BCA ¶ 4001 at 19,744.

Appellant counters that in this case it is significant that the price proposal schedule did not include the VRP, because a prior course of dealing between ECCI and the Corps on Afghanistan projects established that the Corps included standard drawings and specifications in its solicitations, and ECCI had learned on prior projects to look to the price proposal schedule to specify the facilities that were required for any specific project.

ECCI also argues that it is entitled to summary judgment because the contract's CLINs refer to the price proposal schedule to define the required work and the contract's Federal Acquisition Regulation (FAR) 52.215-8, ORDER OF PRECEDENCE— UNIFORM CONTRACT FORMAT (OCT 1997) clause, resolves any inconsistency by giving precedence to the "Schedule" (in this case, the price proposal schedule) over the specifications and drawings.

The government counters that the price proposal schedule was specifically stated not to be part of the contract. Moreover, the government asserts that the term "Schedule" as used in the Order of Precedence clause does not refer to the price proposal schedule. Rather, it is defined in FAR 15.204-1 as including the solicitation/contract form (Part A), the supplies or services and prices/costs (Part B), the description/specifications/statement of work (Part C), packaging and marking (Part D), inspection and acceptance (Part E), deliveries or performance (Part F), contract administration data (Part G), and special contract requirements (Part H). Furthermore, the government asserts that any ambiguity in the contract terms was patent, imposing on ECCI the duty to inquire of the government what was intended, which it did not do.

It is well settled that summary judgment is appropriate only where the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1371 (Fed. Cir. 2014); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). As a general rule, pure contract interpretation is a question of law that may be resolved by summary judgment. *Osborne Construction Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,514 (citing *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir. 1984); *HTA Aviation, LLC*, ASBCA No. 57891 *et al.*, 14-1 BCA ¶ 35,556 at 174,238). But where, as here, the parties vigorously contest the meaning of material contract terms, we have recognized that "material disputes of fact nevertheless may arise concerning the meaning intended by the parties." *Aegis Defence Services Ltd.*, ASBCA No. 59082, 15-1 BCA ¶ 35,811 at 175,138 (citing *International Source and Supply, Inc.*, ASBCA Nos. 52318, 52446, 00-1 BCA ¶ 30,875 at 152,434-35). "When the meaning of a contract and the parties'

intentions are both relevant and in dispute, there are mixed questions of fact and law that pose triable issues precluding summary judgment." *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2 BCA ¶ 34,300 at 169,434.

Appellant has introduced evidence (the affidavit of Mr. Hayward) declaring that in at least two instances, during the performance of the contract that is the subject of this appeal, the government did not insist on the construction of items called out in the specifications and drawings but not included on the price proposal schedule (SOF ¶¶ 16-19). Mr. Hayward's affidavit also introduces evidence of a prior course of dealing on Afghanistan projects that consisted of the use of standard specifications and drawings by the government and a government practice of listing on the price proposal schedule those items actually required to be constructed (SOF ¶ 25).

The evidence regarding the government's non-enforcement of two requirements contained in this contract's specifications but not listed in the bid schedule, combined with the evidence of a prior course of dealing on Afghanistan projects, is sufficient to create a material dispute of fact regarding the parties' intentions. In order to resolve this dispute, we must consider extrinsic evidence, which precludes summary judgment. *See, e.g., Ronald Hsu Construction Co.*, ASBCA Nos. 48682, 49441, 97-1 BCA ¶ 28,739 at 143,453-54 ("where the contract terms are ambiguous, requiring the weighing of external evidence, the matter is not amenable to summary judgment"); *Fairchild Industries, Inc.*, ASBCA No. 46197, 98-2 BCA ¶ 29,767 at 147,508 (when the issue of intent is controverted, it cannot be the subject of a successful dispositive motion); *International Source and Supply*, 00-1 BCA ¶ 30,875 at 152,434 ("we do not interpret contractual terms in a vacuum; rather, our goal is to arrive at an interpretation that accurately reflects the intentions of the parties") (citing *Alvin, Ltd. v. United States Postal Service*, 816 F.2d 1562, 1565 (Fed. Cir. 1987)). Accordingly, the government's motion for summary judgment is denied.

ECCI's motion for summary judgment is also denied. ECCI argues that it is entitled to summary judgment because the contract schedule refers to the price proposal schedule to define the required work and, to the extent there is any inconsistency between the price proposal schedule and the contract specifications, the contract's Order of Precedence clause gives precedence to the price proposal schedule. The government vigorously disputes that the price proposal schedule defines the required work. The government also argues that "Schedule" as used in the Order of Precedence clause is defined in FAR 15.204-1 and it does not include the price proposal schedule, which is specifically not part of the contract. Whether or not the price proposal schedule defines the required work is, as we have stated above, a disputed material fact precluding summary judgment.

8

In light of the foregoing, we need not address other arguments proferred by the parties.

CONCLUSION

The parties' cross-motions for summary judgment are denied.

Dated: 20 February 2015

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58856, 58993, Appeals of ECC International LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9